# Exhibit 2

# OASCR and AFGE Local 3147 CBA

# COLLECTIVE BARGAINING AGREEMENT

## BETWEEN



## Local 3147

### AND

### UNITED STATES DEPARTMENT OF

 AGRICULTURE

# Office of the Assistant Secretary for Civil Rights



**United States Department of Agriculture**

Departmental
Management

Office of the
Assistant Secretary
for Administration

Office of Human
Resources
Management

1400 Independence
Avenue, SW
Washington, DC
20250

December 20, 2019

**TO:**  Naomi C. Earp, Deputy Assistant Secretary for Civil Rights
Office of the Assistant Secretary for Civil Rights

**FROM:**  Daniel M. Kline, Branch Chief */Daniel M. Kline*
Labor Relations Division
Office of Human Resources Management

**SUBJECT:**  Review of the new Collective Bargaining Agreement (CBA) Between the
Office of the Assistant Secretary for Civil Rights (OASCR) and the
American Federation of Government Employees (AFGE) Local 3147

On December 18, 2019, this office transmitted to the parties an Agency Head Review memorandum disapproving the Collective Bargaining Agreement (CBA) submitted to our office on December 4, 2019. Specific language contained within the CBA was found not in conformance with applicable law, rule and regulation. On December 19, 2019, this office received the Parties' renegotiated provision adopting the Department's recommended language.

On behalf of the Secretary of Agriculture and in accordance with 5 U.S.C. § 7114(c) (2), the Department has conducted an Agency Head Review of the subject CBA executed on December 19, 2019. After review of the renegotiated provision, the Department finds it consistent with current applicable law, rule and regulation. Therefore, the CBA shall have the effective date of this memorandum.

Enclosure

cc:   Mary Pletcher, OHRM
Winona M. Scott, OASCR
Curtis R. Kibler, OHRM
Claudette L. Joyner, AFGE
Ashaki "Teddi" Mitchell, AFGE

## TABLE OF CONTENTS

**Article**                                                                            **Page**

1.       Recognition                                                          1
2.       Controlling Authority                                               2
3.       Management Rights                                                   3
4.       Employee Rights                                                     5
5.       Union Representation and Official Time                              7
6.       Employee Development and Training                                  13
7.       Mid-Term Bargaining and Negotiations                              16
8.       Alternative Dispute Resolution Program                            19
9.       Equal Employment Opportunity (EEO)                                20
10.      Reasonable Accommodation for Employees with Disabilities          21
11.      Employee Assistance Program                                       24
12.      Filling Bargaining Unit Positions                                 25
13.      Career Ladder Promotions                                          29
14.      Performance Management                                            31
15.      Safety and Health                                                 35
16.      Hazardous Weather                                                 38
17.      Awards                                                            39
18.      Position Description                                              41
19.      Overtime                                                          43
20.      Pay and Environmental Differential                               44
21.      Details and Temporary Promotion and Reassignments                45
22.      Work Schedules                                                    47
23.      Leave                                                             50
24.      Holidays                                                          52
25.      Corrective, Disciplinary and Adverse Actions                     53
26.      Grievance Procedures                                              56
27.      Arbitration                                                       61
28.      Reduction in Force, Reorganization and Transfer of Function      63
29.      Contracting Out                                                   65
30.      Concerted Activity                                                66
31.      Information and Publicity                                         67
32.      Dues Withholding                                                  68
33.      Duration                                                          70

# ARTICLE 1
# RECOGNITION

## Section 1

This Agreement is made and entered into by and between the United States Department of Agriculture (USDA), Office of the Assistant Secretary for Civil Rights (OASCR) (hereinafter referred to as OASCR, the Agency, or Management); and the American Federation of Government Employees (AFGE), Local 3147 (hereinafter referred to as the Union or Bargaining Unit), collectively known as the Parties. USDA/OASCR Bargaining Unit Employees are hereinafter referred to as Employees or BUEs.

## Section 2

Management hereby recognizes the Union under the provisions of Title VII of the Civil Service Reform Act of 1978, also known as the Federal Service Labor-Management Relations Statute, as the sole and exclusive representative for all employees in the Bargaining Unit which is defined as follows:

> The Representation Unit to which this Agreement applies includes all nonprofessional employees employed by the Office of the Assistant Secretary for Civil Rights, U.S. Department of Agriculture, Washington, D.C., excluding professional employees, management officials, supervisors, and employees described in 5 U.S.C. §§ 7112(b)(2), (3), (4), (6) and (7).

## Section 3

Management and Union agree that the terms and conditions of this Agreement apply to all employees in the Bargaining Unit.

## ARTICLE 2
## CONTROLLING AUTHORITY

In the administration of all matters covered by this Agreement the parties will adhere to federal laws and government-wide regulations.

Nothing in this Agreement or article will prohibit OASCR from implementing new governmentwide rules, regulations, laws, Executive Orders, new USDA Departmental Regulations and/or Agency policies.

OASCR will notify AFGE within three (3) workdays of all implementations as a result of the above. The Union may initiate Impact and Implementation bargaining in accordance with procedures set forth in Article 7.

The Parties agree to work together to reduce or remedy potential adverse impacts to employees.

# ARTICLE 3
# MANAGEMENT RIGHTS

## Section 1

Management officials of the Agency retain the right, in accordance with 5 U.S.C. § 7106, to determine the mission, budget, organization, number of employees and internal security practices of the Agency; and in accordance with applicable laws to:

    A. hire, assign, direct, layoff and retain employees in the Agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees;

    B. assign work, to make determinations with respect to contracting out and to determine the personnel by which agency operations shall be conducted;

    C. make selections for appointments with respect to filling positions from among properly ranked and certified candidates for promotion, or other appropriate sources; and

    D. take whatever actions may be necessary to carry out the Agency's mission during emergencies.

[References include, but are not limited to: 5 U.S.C. § 7106]

## Section 2

Nothing in this Section shall preclude agency or labor organization from negotiating:

    A. at the election of the Agency, on the numbers, types and grades of employees or positions assigned to organizational subdivision, work project, or tour of duty, or on the technology, methods, and means of performing work;

    B. procedures which Management officials of the agency will observe in exercising authority under this Section; or

    C. appropriate arrangements for employees adversely affected by the exercise of authority under this Section by such Management officials.

[References include, but are not limited to: 5 U.S.C. § 7106

**Section 3**

Management officials and supervisors retain the right to meet with Unit employees and without the presence of a Union representative concerning any matter that is not a condition of employment, as stated in 5 U.S.C. § 7114 (a)(2).

**Section 4**

The requirements of this Article shall apply to all supplemental agreements between the Parties.

## ARTICLE 4
## EMPLOYEE RIGHTS

<u>Section 1</u>

Each employee shall have the right to form, join, or assist any labor organization, or to refrain from such activity, freely and without fear of penalty or reprisal. Each employee shall be protected in the exercise of such right. Except as otherwise provided under this chapter, such right includes the right to:

A.  act for a labor organization in the capacity of a representative and the right, in that capacity, to present the views of the labor organization to the heads of agencies and other officials of the Executive Branch of the Government, the Congress, or other appropriate authorities, and

B.  engage in collective bargaining with respect to conditions of employment through representatives chosen by employees under this chapter.

<u>Section 2</u>

Nothing in this Section shall preclude the labor organization from enforcing discipline in accordance with procedures under its constitution or bylaws to the extent consistent with the provisions of this chapter. In conjunction with this Agreement, employees may retain any rights which fall under the Kalkines Warning, Weingarten Rights; and Garrity Rights.

<u>Section 3</u>

An exclusive representative of an appropriate Unit in an Agency shall be given the opportunity to be represented at any:

A.  formal discussions between one or more representatives of the Agency and one or more employees in the Unit, or their representatives, concerning grievances or personnel policy or practices, or other general conditions of employment, or;

B.  examination of an employee in the Unit by a representative of the Agency in connection with an investigation if the employee:

1.  reasonably believes that the examination may result in disciplinary action against the employee; and

2.  requests representation.

The employee will be given sufficient advanced notice prior to being interviewed in order to obtain Union representation.

If the employee is to be served with a warrant or subpoena, where possible, it will be done in private without the knowledge of other employees.

The Agency will not deal directly with bargaining unit employees on matters such as working conditions, personnel policy or practices, or by engaging in formal discussions without Union notification. This does not apply to:
- administering work assignments;
- informal counseling (e.g., tardiness);
- issuance of a proposed disciplinary or adverse action (including the subsequent decision);
- the reasonable accommodation interactive process and oral replies (when the Union is not the designated representative); and
- performance counseling.

## Section 4
In dealings between Management and Bargaining Unit employees, both Parties shall treat each other with dignity and respect. For example, there should be no verbal abuse. In addition, employees will be dealt with in a fair and equitable manner. When Management wishes to discuss matters of misconduct or of a sensitive nature with an employee, it should be done in private, away from other employees. In accordance with this Agreement, the employee shall have the right to exercise the option to request a Union representative.

[References include, but are not limited to: 5 U.S.C. §§ 7102, 7114(a)(2), and 7116(c)(2)]

## ARTICLE 5
## UNION REPRESENTATION AND OFFICIAL TIME

<u>Section 1</u>
OASCR will recognize the national and district officers of AFGE as well as its officers, stewards, and business agents(s). AFGE national and district officers will be provided access to the premises occupied by OASCR employees once their requests are approved by Management.

Officers, stewards, and other representatives of Local 3147 (collectively referred to as "Union Representatives") are authorized to request Official Time.

Management will not approve Official Time for Union Representatives who are not employees of OASCR.

The Union shall provide a list of Union Representatives to the Agency's Labor Relations Officer. The Union will provide the list within 30 calendar days of the effective date of this Agreement. Any changes to the list will be submitted to OASCR in writing within five (5) workdays before the newly appointed or elected representative is expected to begin performing representational duties.

OASCR Bargaining Unit Employees who are not Union Representatives may also request Official Time for purposes authorized by the statute (5 U.S.C. § 7131).

<u>Section 2</u>
Prior to using Official Time, Union Representatives will request approval from their supervisor or supervisor's designee. Requests can be made to the supervisor by: 1) WebTA; 2) email; 3) Official Time Request Form; or 4) other written request. All Official Time requests must include:

- the requestor's name;
- phone number where the individual may be reached during Official Time;
- date(s) of the Official Time;
- estimated start time;
- estimated end time;
- location of union activity;
- purpose (as noted by the Transaction Code); and
- date the request is submitted.

Requests should be made as soon as the Union Representative is aware of the need for Official Time. Management and Union Representatives understand the need for expeditiously addressing

employee-related issues and agree to promptly make requests and approvals. Union Representatives will obtain approval for Official Time prior to using Official Time. Timeframes and deadlines associated with this negotiated agreement shall be extended by the same number of days as the time elapsed between the request and approval, if the need arises.

Union Representatives responding to emergency situations (examples include: removal of employees from the workplace; injury on the job; Weingarten invocation; investigation by an enforcement entity) should request a waiver for pre-approval in writing as quickly as possible after the emergency has been addressed. All use of Official Time will be properly documented on the Representative's Time and Attendance Sheet in WebTA.

### Section 3

Everything in this article applies whether the Union Representative and/or employee will be using Official Time at his or her work station or away from his or her work station. For brief (15 minutes or less) communications (phone call, email, unscheduled office visit), no prior approval is required.

The supervisor or supervisor's designee will approve Official Time requests submitted in advance unless work-related deadlines requirements preclude such approvals. If the request is denied the supervisor will notify the Union Representative by email with as much advance notice as possible. Such notification will provide the Union Representative with the business reason for the denial. The supervisor or the supervisor's designee will work with the Union Representative to schedule the next available opportunity. Delays in approving Official Time may necessitate the extension of timeframes.

### Section 4

Once Union Representatives have obtained approval from the supervisor or supervisor's designee, Union Representatives will adhere to the estimated start and end times as closely as possible and notify the supervisor or supervisor's designee if modifications to the requested times are needed. If additional time is needed, Union Representatives must request an extension of time. The supervisor or supervisor's designee will approve the Official Time extension unless it is not appropriate due to work-related deadline requirements.

### Section 5

The Parties will adhere to federal law and government-wide regulations with respect to the use of Official Time. If Executive Orders or USDA policies conflict with this Agreement, the Union may initiate Impact and Implementation bargaining to address any concerns.

The use of Official Time may be authorized for representational activities that include, but are not limited to:

A. Attending formal discussions between one or more representatives of the Agency and one or more employees in the unit or their representatives concerning any grievance or any personnel policy or practices or other general condition of employment;

B. Attending an examination of a Bargaining Unit Employee by a representative of the Agency in connection with an investigation if the employee reasonably believes that the examination may result in disciplinary action against the employee and the employee requests representation;

C. Meeting with management representatives;

D. Meeting with employees to resolve complaints and grievances;

E. Attending grievance meetings with managers and employees;

F. Attending meetings with Federal Labor Relations Authority or Federal Mediation and Conciliation Service representatives;

G. Serving as a witness at an arbitration or an unfair labor practice charge or complaint;

H. Participating as the representative of the union at an arbitration, unfair labor practice hearing or impasse proceeding related to the AFGE Local 3147 Bargaining Unit;

I. Requesting Official Time by an employee; and

J. Other representational activities permitted by this agreement.

**Section 6**

A  In accordance with 5 USC 7131 (b), the use of official time is prohibited for internal union business

B  The Agency will not authorize official time for lobbying or political activities.

C  Representatives or employee will not be reimbursed for expenses incurred performing non-Agency business, unless required by law or regulation.

D  Official time is not permissible for formal Worker's Compensation or formal EEO complaints.

E   Representatives or employees are not authorized to earn premium or differential pay, overtime or compensatory time (to include travel compensatory time) for their performance of union representational duties. In unforeseen or exceptional circumstances, at the sole discretion of the Agency, premium or differential pay, overtime or compensatory time (to include travel compensatory time) may be approved.

F.   Work schedules will not be adjusted for the sole purpose of using official time. In unforeseen or rare circumstances, at the sole discretion of the Agency, work schedules may be adjusted.

G   With advanced management approval, Official Time may be used in an Agency facility, a third-party litigation facility, or at an approved telework site.

H   Representatives and employees, when acting on behalf of the Union on official time, may be permitted the free or discounted use of government property or any other Agency resources if such free or discounted use is not generally available for non-Agency business by employees when acting on behalf of non-Federal organizations. Such property and resources include office or meeting space, reserved parking space, phones, computers and computer systems.

I   Employees may not use Official Time to prepare or pursue grievances (including arbitration of grievances) brought against OASCR under procedures negotiated by the parties pursuant to section 7121 of title 5 U.S.C. These prohibitions do not apply to:

    1.   An employee using Official Time to prepare for, confer with an exclusive representative regarding, or present a grievance brought on the employee's own behalf; or to appear as a witness in any grievance proceeding; or

    2.   An employee using Official Time to challenge an adverse personnel action taken against the employee in retaliation for engaging in federally protected whistleblower activity, or under any other similar whistleblower law.

## Section 7

Union Representatives and employees must not use Official Time or duty time to conduct internal union business. Internal union business includes, but is not limited to, the following:

A.  Solicitation of membership;

B.  Elections of labor organization officials; and

C.  Collection of dues.

Official Time will only be authorized during the Union Representative's official duty hours and may be approved while teleworking. The supervisor or supervisor's designee will notify the Agency's Labor Relations Officer immediately when Official Time is denied.

## Section 8

Union Representatives will be responsible for using the proper Transaction Codes (TC) in WebTA when completing their timesheets. WebTA provides a title for each Official Time TC when a transaction is clicked in the "Work Time" section. The following TCs apply to the use of Official Time:

35 - Term Contract Negotiations
36 - Mid-Term Negotiations
37 - Formal Discussions, Other Representational Functions
38 - Grievances, Charges and Appeals

## Section 9

Disputes over the use of Official Time should first be addressed through the Negotiated Grievance Procedure as outlined in this Agreement.

## Section 10

Management may approve Official Time for each Union Representative during each year of this agreement to attend training of mutual interest to the Union and the Agency. The Union will recommend the Bargaining Unit Employees who will attend these training sessions. This will not exceed three Union Representatives per year.

## Section 11

Union Representatives may make Information Requests that meet the criteria in 5 U.S.C. § 7114.

Annually, upon request, or when staff changes occur, Management will provide the Union with a modifiable and searchable electronic listing of all OASCR Bargaining Unit Employees. The list should include, at a minimum:

- First and last name of employee;
- Employment status (Full-Time, Part-Time, Retired, etc.);
- Position Series and Grade;
- Email address; and
- Immediate supervisor.

[References include, but are not limited to: 5 U.S.C. §§ 7114, 7117, and 7131]

## Office of the Assistant Secretary for Civil Rights
## Official Time Request Form

Requester's Name: _____     Union Rep ☐     Employee ☐

Phone Number: _____

Date Official Time will be used: _____

Estimated Start Time: _____     Date Request Submitted: _____

Estimated End Time: _____

Location of Union Activity: _____

| 35 - Term Contract Negotiations |
| 36 - Mid-term Negotiations |
| 37 - Formal Discussions, Other Representational Functions |

**Purpose of Union Duties:**                                                                 **TC Code**

| | | TC Code |
|---|---|---|
| ☐ | Attending formal discussions between one or more representatives of the Agency and one or more employees in the unit or their representatives concerning any grievance or any personnel policy or practice or other general conditions of employment. | 37 |
| ☐ | Attending an examination of a bargaining unit employee by a representative of the Agency in connection with an investigation if the employee reasonably believes that the examination may result in disciplinary action against the employee and the employee requests representation. | 37 |
| ☐ | Meeting with management representatives. | 35/36/37/38 |
| ☐ | Meeting with employees to resolve complaints and grievances. | 38 |
| ☐ | Attending grievance meetings with managers and employees. | 38 |
| ☐ | Attending meetings with Federal Labor Relations Authority or Federal Mediation and Conciliation Service representatives. | 38 |
| ☐ | Serving as a witness at an arbitration or an Unfair Labor Practice charge or complaint. | 38 |
| ☐ | Participating as a representative of the Union at an arbitration, unfair labor practice hearing or impasse proceeding related to the AFGE Local 3147 Bargaining Unit. | 38 |
| ☐ | Requesting Official Time by an employee | 35/36/37/38 |
| ☐ | Other representational activities permitted by this Agreement | 35/36/37/38 |

Approved: ☐     Denied: ☐

Business Reason for the denial. Specify when the Official Time will be approved.

_____

_____

Supervisor Signature: _____     Date: _____

## ARTICLE 6
## EMPLOYEE DEVELOPMENT AND TRAINING

**Section 1**

All employee development and training actions will be governed by laws, federal regulations, rules and policies, including DR 4040-410, "Creating Individual Development Plans," and this Agreement.

**Section 2**

Individual Development Plans (IDPs) can be an effective tool for the development of USDA employees. As part of long-term career planning, employees, supervisors and training managers can use IDPs to outline training and more importantly, create activities that will lead to a more engaged, effective and skilled workforce. IDPs are also an important part of succession planning by helping employees develop skills that will be needed in the future. The use of IDPs can also help close employee competency gaps.

IDPs are required by OASCR for Bargaining Unit Employees. If an employee declines an IDP, the supervisor should note on the IDP "No further development desired/required at this time."

The Parties understand:

A. Training and development of employees is a matter of importance. Management should identify present and future organizational training needs and make every reasonable effort to provide training and development to all employees, including, but not limited to, training necessary to carry out all requirements of their job within a reasonable length of time after entering a new position. In addition, new employees will be provided an overview of the OASCR mission.

B. Budgetary obligations and funding for employee training is the exclusive right and responsibility of Management. Wherever possible, managers, supervisors, and employees will utilize cost-effective training opportunities such as AgLearn.

C. Employees' professional development should be an ongoing process to ensure employees are staying current in their fields and mission-critical competencies. Planning for continuous development must be anchored to the agency's mission, goals, objectives, and needs, as well as be tied to the employee's work and career goals.

D. Management determines when participation in or completion of mission-critical training courses is mandatory and will notify the Union in advance via email of the required training. This notice does not apply to training mandated by the Department or higher-level authority (e.g., Civil Rights, travel card, annual Security Awareness, etc.).

E. When attending training, an employee may be required to change to another work schedule that conforms to the training schedule. When Management requires an employee to attend job-related training courses which will require a change in work schedule or location,

managers, supervisors, and employees will work together to ensure that schedules are properly modified in a timely manner.

F. Training requests and documentation of completed training will be processed by "Authorization, Agreement and Certification of Training," Standard Form (SF) 182. Employees will submit training requests in advance.

G. Employees will not be reimbursed for unauthorized training.

## Section 3

Selection for training opportunities shall be carried out in a fair and equitable manner:

A. Based on the needs of the organization;

B. Within Agency budgetary limitations; and

C. Consistent with equal employment opportunity guidelines, affirmative action goals, staff development goals and applicable statutory or regulatory provisions.

## Section 4

Management and employees are encouraged to utilize an Individual Development Plan (IDP). Supervisors and employees should discuss training needs and opportunities that would help employees perform the duties of their current position, improve skills and competencies and provide career development opportunities.

Employees should work with their supervisor to develop an IDP to identify training requests related to the performance of duties in their current position, as well as opportunities for career development which can further the Agency's ability to achieve its mission.

The supervisor's approval of an IDP does not commit the Agency to obligate funds for training and/or courses contained within an IDP.

Unscheduled discussions concerning an employee's training needs and career development opportunities may be initiated by the employee or supervisor at any time separate from the process to develop an IDP.

## Section 5

Completion of the IDP form acknowledges the employee's commitment to accomplish the planned training and development. To implement the plan effectively, three actions are required on the employee's part:

A. Documentation: Formal training and developmental activities that involve exchange of funds, Official Time or both must be documented.

B. Participation: Once the request for training is approved, it is up to the employee to carry through with the experience. The supervisor will support and guide the employee, but the employee is primarily responsible for successfully reaching the goals.

C. Evaluation: After each developmental activity, the employee should meet and discuss with the supervisor the developmental experience and lessons learned and how those lessons can be applied to the employee's current work.

Supervisors will be responsible for periodically reassessing employee's plan, meeting with employee after each training and developmental activity, and documenting how the IDP has resulted in changes to the employee's performance.

## ARTICLE 7
## MID-TERM BARGAINING AND NEGOTIATIONS

### Section 1

Negotiations are an important tool for Agency and Bargaining Unit Employees. It is the opportunity to present information and proposals that could ultimately benefit all interested parties, including the public. Negotiations should be focused, productive, and carried out by both parties in good faith.

When there is a legal requirement to do so, the Parties will engage in good faith bargaining in accordance with 5 U.S.C. Chapter 71. The Parties recognize that the impact of changes in conditions of employment are not always foreseeable. Therefore, Impact and Implementation (I&I) bargaining can occur either before implementation or after initiating changes in conditions of employment. The Parties also recognize the importance of the Agency's mission, and that changes in conditions of employment may be necessary to maintain the efficiency of the service it provides to the public.

The Parties agree post-implementation I&I bargaining should commence within thirty (30) workdays after documented changes in conditions of employment have occurred. Nothing in this Agreement or article will prohibit the Agency from implementing new government-wide rules, regulations, Executive Orders (EO), USDA Departmental Regulations (DR), or Agency policies; however, the Parties understand the importance of negotiating earlier in the process.

### Section 2

Except in cases of an emergency, as soon as possible, the Agency will provide the Union with written notice of any new government-wide rules, regulations, EOs, USDA DRs, or Agency policies that conflict with this Agreement and are greater than *de minimis* (i.e., significant changes). If an emergency prevents immediate notice to the Union of new rules, regulations, EOs, and DRs, Management will provide the Union with this information as soon as possible.

The Agency will notify the Union, in writing, when changes in conditions of employment are proposed. The Union shall acknowledge, in writing, receipt of the Agency's notice. The Agency's notice will, at a minimum, contain the following information:

- Description of the change or proposed change;
- An explanation of how the change will be implemented;
- The date of implementation or proposed implementation;
- Name of Division(s) impacted or a list of impacted employees;
- Potential impacts on the employees (if known);
- The proposed duration of the change(s) (temporary or permanent); and
- If permanent, what documentation will be available to verify the change(s) (e.g., SF-50, new Position Description, etc.).

The Agency will provide the Union President or designee with written notice of proposed changes. Upon electing to bargain, the Union President or designee will send a Demand to Bargain request to the Agency's Labor Relations Officer or designee within ten (10) workdays from the date the Agency's written notice was delivered. The Agency shall acknowledge, in writing, receipt of the Union's request. The Union's Demand to Bargain request will, at a minimum, contain the following information:

- Proposals reasonably related to the proposed changes;
- Identify (if known) the adverse impacts of affected employees;
- An explanation of the identified adverse impacts; and
- Recommended procedures and/or appropriate arrangements to reduce/remedy adversely affected employees.

### Section 3

To expedite properly implemented changes, the Union can request to informally discuss the changes and impact with the head of the impacted division and the Agency's Labor Relations Officer or designee. This discussion can be a tool to help both sides find a productive common ground. Likewise, Management can request an informal meeting with Union representatives to facilitate or expedite the roll-out of these changes.

The Parties are encouraged to request all additional information pertaining to the proposed changes prior to the start of the agreed upon negotiation date. Because negotiations can be fluid and new information can surface at any time, additional information can be requested by either party until the conclusion of the negotiation process and a decision has been made. The Parties will mutually agree on a date to commence negotiations. The Parties will work together to commence and conclude negotiations at the earliest time possible.

### Section 4

Either party may request to open the agreement for the purposes of conducting mid-term bargaining on matters not covered by this Agreement. Such requests will be no earlier than two (2) years from the date of the Agency Head Approval (AHA), or binding date, of this Agreement and no later than sixty (60) days after such date. Within seven (7) workdays of notice, the Parties will mutually agree to a date to commence Ground Rules negotiations. The Parties agree Ground Rules are essential only for term and Mid-Term Bargaining. The Parties will work in good faith to finalize the Ground Rules within six (6) weeks of the initial request for Mid-Term Bargaining.

A representative from the Federal Mediation and Conciliation Service can be requested to attend any negotiation meeting by either party.

Upon AHA, or binding date, of the Ground Rules, the initiating party will submit their proposals within ten (10) workdays to the receiving party. The receiving party will send counterproposals within twenty (20) workdays after the date initial proposals were received. Bargaining will commence within seven (7) workdays, or as mutually agreed, after proposals are exchanged. Counterproposals by the receiving party can include the introduction of new articles not contained

in the signed Agreement or modifications to proposals from the initiating party. The Parties will work in good faith to conclude negotiations within six (6) months of the start date.

Articles impacted by the proposals submitted during Mid-Term Bargaining may be opened by either party for the purpose of clarifying information. This re-opening should be focused on preventing conflicting or confusing information between the existing Agreement and agreements reached during Mid-Term Bargaining.

The Parties must submit all agreements (term, supplemental, letters, Memoranda of Understanding/Agreement), however designated, to the USDA Labor Relations Officer for Agency Head review. Any unwritten agreements may be terminated at any time without notice.

**ARTICLE 8**
**ALTERNATIVE DISPUTE RESOLUTION PROGRAM**

Alternative Dispute Resolution (ADR) is governed by federal laws, regulations, rules, and policies.

Employees who wish to use ADR have the right to use the ADR program. The mediation process shall be completed within fifteen (15) workdays. Time limits for the mediation process may be extended by mutual agreement.

The timeframe for filing a negotiated grievance shall not start until the ADR process has ended.

[References include, but are not limited to: DR 4710-001, "Alternative Dispute Resolution"]

# ARTICLE 9
## EQUAL EMPLOYMENT OPPORTUNITY (EEO)

All Equal Employment Opportunity (EEO) is governed by federal laws, regulations, rules, and policies.

### Section 1

The Parties agree to cooperate in providing equal opportunity and preventing discrimination against any employee based on race, color, religion, sex (including gender identity, sexual orientation, and pregnancy), national origin, age (40 or older), disability or genetic information. The law also protects you from retaliation if you oppose employment discrimination, file a complaint of discrimination, or participate in the EEO complaint process (even if the complaint is not yours). There are also federal laws and regulations and Executive Orders (which are not enforced by the Equal Employment Opportunity Commission) that prohibit discrimination on cases such as sexual orientation, marital status, parental status, political affiliation, equal pay/compensation, and labor organization affiliation or non-affiliation.

### Section 2

Management will make available current websites or contact information on EEO counseling and complaint processes (https://www.ascr.usda.gov/filing-discrimination-complaint-usda-employee)

### Section 3

Employees will be encouraged to participate in EEO-related special events and functions.

### Section 4

The Agency shall continue to make available training and provide information on various EEO and discrimination laws.

### Section 5

Employees have the right to Union representation, upon request by the employee, during the EEO process.

[References include, but are not limited to: DR 4300-006, "Civil Rights Policy for the Department of Agriculture"]

## ARTICLE 10
## REASONABLE ACCOMMODATION
## FOR EMPLOYEES WITH DISABILITIES

Reasonable Accommodation is governed by federal laws, regulations, rules, and policies, including Departmental Regulation 4300-008, "Reasonable Accommodation and Personal Assistance Services Policy and Procedures," and this Agreement.

### Section 1

The Agency is committed to affirmative action for the recruitment, hiring, inclusion, and advancement of qualified individuals with disabilities/impairments.

For the purposes of this Agreement, an "accommodation" is defined as "any change in the work environment or in the way things are customarily done that enables an individual with a disability to enjoy equal employment opportunities."

The Agency will offer reasonable accommodations to the known physical or mental limitations of qualified individuals with disabilities/impairments regardless of the type of appointment, unless the Agency can demonstrate that the accommodation would impose an undue hardship on the operation of the Agency.

When an applicant or employee with a disability decides to request an accommodation, the individual or their representative must inform the employee's immediate supervisor or reasonable accommodation coordinator (Coordinator) about the need for an accommodation. To request accommodations, an individual may use "plain English" and need not mention the Americans with Disabilities Act Amendments Act (ADAAA) or use the phrase "reasonable accommodation." Employees may initiate reasonable accommodation requests with their immediate supervisor or the Coordinator verbally or in writing (hard copy or email). Employees seeking reasonable accommodations need not disclose personal or medical information to supervisors, as supervisors do not evaluate medical documentation. Employees seeking reasonable accommodations must provide specific and descriptive documentation to the Coordinator. The Coordinator can provide the supervisor with information on the employee's limitations to facilitate the interactive process.

The Parties understand a reasonable accommodation involves an interactive process to assist in identifying the necessary adjustments requested and to determine the appropriate accommodation. The Parties agree the interactive process does not constitute a formal meeting requiring advance notice to the Union. Unless requested by the employee, Union representation will not be required during the interactive process.

The Parties recognize a reasonable accommodation will be determined on a case-by-case basis, taking into consideration the employee's existing limitations in relation to his/her essential job functions. Applicants and employees may request a reasonable accommodation any time throughout their application, hiring, and employment experience.

The Agency is not required to provide personal use items needed in accomplishing daily activities as a reasonable accommodation (e.g., prosthetic limbs, wheelchairs, eyeglasses, hearing aids, or

similar devices).

The Parties recognize a reasonable accommodation involves the removal of barriers to equal employment. Generally, this means an adjustment made to a job and/or work environment that enables a qualified person with a disability to perform the essential duties of that position.

There are three categories of "reasonable accommodation":

A.  Modifications or adjustments to a job application process that enable a qualified applicant with a disability to be considered for the position; or

B.  Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position; or

C.  Modifications or adjustments that enable the Agency's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by similarly situated employees without disabilities/impairments.

[References include, but are not limited to: The Americans with Disabilities Act of 1990; The Americans with Disabilities Act Amendments Act of 2008; The Rehabilitation Act of 1973]

Should an employee with a qualified disability become unable to perform the essential functions of his/her job, after fully exhausting a reasonable accommodation, the Agency may seek to reassign the employee if and when a funded vacant position is available.

For employees with disabilities/impairments, job restructuring is a method by which some qualified employees with disabilities/impairments may be accommodated. Job restructuring generally means modifying the job to reallocate or redistribute nonessential or marginal job functions or altering when and/or how a function is performed. Job restructuring does not alter the essential functions of the job; rather, any changes made are those which enable the person with a disability to perform those functions. The process for restructuring jobs may include, but is not necessarily limited to:

A.  Identifying which marginal job function, if any, the employee with a disability cannot fulfill with a reasonable accommodation.

B.  Reallocating and swapping a non-essential job function, so the employee with the disability may continue to fulfill the essential job functions; or

C.  Working with employees to modify deadlines, timeframes, priorities, duty hours, duty station, and remote working conditions.

The Parties agree that in many cases, changes in the work environment enable persons with disabilities/impairments to more effectively perform their job duties.

An employee may be provided an assistance device, if the Agency determines the use of the equipment is necessary to perform official duties. Employees may contact the USDA Target Center for a more complete catalogue of the assistive technology, ergonomics, and particular accommodation devices, at: https://www.targetcenter.dm.usda.gov/

### Section 2
Unpaid leave may be an appropriate reasonable accommodation when an individual expects to return to work after receiving treatment for a disability, recovering from an illness, or taking some other action in connection with his/her disability.

### Section 3
The Agency will provide a reasonable accommodation to employees with disabilities/impairments to ensure full access to all training and developmental opportunities.

### Section 4
It is the intent of the Agency to provide on-the-job training opportunities to qualified employees with disabilities/impairments consistent with operational needs.

### Section 5
Management agrees to provide interpreter services for those employees with disabilities/impairments who seek Union assistance and/or representation on their individual concerns. To the extent possible, this should be arranged in advance.

### Section 6
A reasonable accommodation may be provided to employees with disabilities/impairments on a case by case basis to ensure equal access to government travel. To provide employees with disabilities/impairments equal opportunity to travel on official business, certain additional travel expenses necessarily incurred to accommodate the employee's disability may be reimbursed under the Federal Travel Regulations.

### Section 7
The parties agree that telework and flexiplace may be considered a reasonable accommodation on a case-by-case basis, when the essential job functions can be performed at home and a work at home arrangement would not cause undue hardship.

### Section 8
A modified work schedule may be considered a reasonable accommodation in certain circumstances when there is a direct correlation to the employee's limitations. It may include a number of modifications, such as altering arrival/departure times, providing periodic breaks during the day, or changing when certain functions are done.

## ARTICLE 11
## EMPLOYEE ASSISTANCE PROGRAM

The Employee Assistance Program (EAP) is governed by federal laws, regulations, rules, and policies.

### Section 1
The Parties jointly affirm their support for EAP, which is available to Bargaining Unit Employees.

### Section 2
Bargaining Unit Employees may be advised of the existence of EAP and will be provided appropriate opportunities to participate. It is recognized that counseling under this program is voluntary and confidential. The Parties recognize an employee's physical and mental well-being may impact the employee's conduct, performance, and job satisfaction.

### Section 3
Information on EAP will be made available via email, links to current website, or points of contact. Management will provide information to employees about EAP upon request.

### Section 4
Employees are encouraged to work with their supervisors on appropriate times to consult with EAP during their tour of duty but need not disclose to the supervisor any further details about the nature or reason for the assistance needed. Either of the Parties may contact EAP staff periodically to give informational presentations at all-hands meetings or Management-Union meetings.

[References include, but are not limited to: DR 4430-792-001, "Employee Assistance Program"]

## ARTICLE 12
## FILLING BARGAINING UNIT POSITIONS

**Section 1**

This Article pertains to filling Bargaining Unit positions within OASCR.

[References include but are not limited to DR 4030-335-002]

It is OASCR policy to: (a) recruit qualified, diverse individuals to ensure bringing the best candidates to the attention of management; (b) give employees an opportunity to receive fair, equitable, and appropriate consideration for higher level jobs; (c) provide an incentive for employees to improve their performance and develop their knowledge, skills, and abilities; and (d) provide career opportunities for employees.

The Agency, when it intends to fill vacant Bargaining Unit positions, will give written notification to the Union a minimum of five (5) workdays in advance of the intended release of the vacancy announcement, which shall contain: (a) opening and closing date; (b) area of consideration (e.g., agency-wide, all sources); (c) title/grade/series; (d) geographic location; (e) summary of duties; and (f) promotion potential.

**Section 2**

No later than the day of posting on USAJOBS, the Agency will provide the Union electronic copies of the vacancy announcement for Bargaining Unit positions within OASCR.

The Agency may fill Bargaining Unit positions through any appropriate method including, but not limited to, reassignment, transfer, reinstatement, promotion, special placement, RIF, or competitive announcements. All Bargaining Unit vacancy announcements will be open for a minimum of five (5) workdays. Vacancy announcements for Bargaining Unit positions will contain, at a minimum, the following information:

(1) "This position has been identified as a Bargaining Unit position" in the Overview section;

(2) announcement number with opening and closing date;

(3) area of consideration;

(4) title, series, grade, and number of vacancies to be filled;

(5) geographic location of vacancy(ies);

(6) summary of the duties of the vacancy(ies);

(7) knowledge, skills and abilities (KSAs), if applicable;

(8) selective placement factor(s), if applicable;

(9) known promotion potential, if any;

(10) instructions for applying, to include the name and phone number of the contact person for any information concerning the vacancy announcement or to obtain a copy of the position description;

(11) whether reimbursement for relocation expenses is authorized in the event selection is made of a candidate from outside the commuting area;

(12) a statement that the principles of equal employment opportunity will be adhered to in all phases of the selection process; and

(13) a statement of time-in-grade requirements.

Employees who wish to be considered for vacancies may review vacancy announcements online at USAJOBS. Contact information for Human Resources (HR) will be on the vacancy announcement. Applications will be considered timely and complete if in compliance with instructions provided in the vacancy announcement.

Applicants with current Federal status must submit their most recently completed annual performance appraisal/rating of record (dated within 18 months) identifying the employee's official performance appraisal/rating of record, signed by the supervisor, or they must provide a statement advising why the performance appraisal/rating of record is unavailable. A performance plan is not an acceptable substitute. If the applicant fails to provide a signed copy of the performance appraisal/rating of record, or a statement advising why it is unavailable, the applicant will be removed from further consideration.

## Section 3
Applicants will be selected and evaluated based on knowledge/skills/abilities (KSAs), selective placement factors described in the vacancy announcement, and applicable laws, rules, and regulations providing the basis for determining qualified candidates.

In most circumstances, the area of consideration shall be at least agency-wide. For the purpose of area of consideration at the department level, agency-wide is defined as a USDA administrative office (e.g. OASCR) whose head reports directly to the Secretary.

If the Agency initially announces a position only to OASCR (the location covered by this agreement) and subsequently re-announces to a broader area of consideration, all applicants must reapply and resubmit all required documents in accordance with the new announcement.

## Section 4
The servicing HR specialist will evaluate all applicants to determine eligibility and assign a qualification rating – basically qualified, well qualified or best qualified. The Servicing HR specialists may obtain assistance from a subject matter expert other than the Selecting Official to determine an applicant's appropriate rating.

## Section 5

Upon receipt of the Certificate(s) of Eligibles, the Selecting Official, in consultation with their servicing HR specialist, will determine the best method for making a selection. At his or her election, the Selecting Official may conduct telephonic, video conference, or in-person interviews.

The Selecting Official will comply with all applicable laws, rules and regulations as well as with this Agreement. The Selecting Official must consider candidates for the vacancy(ies) being filled according to the following order of precedence:

  A.  Quality CTAP applicants;
  B.  Former Department employees who are on the Department's priority re-employment or re-promotion list; and
  C.  Best-Qualified applicants from all other sources.

The Selecting Official is not required to fill a vacancy by selecting one of the candidates listed on the certificate. The Selecting Official may:
  A.  request to re-advertise the position with an extension of the area of consideration;
  B.  request additional recruitment efforts; and/or
  C.  fill the job by some other type of placement action (e.g., reassignment).

If a vacancy announcement is canceled, the reason for the cancellation shall be noted on the promotion certificate or, in the absence of a certificate, in the vacancy announcement. The reason for the cancellation will be communicated in writing to the Union. Bargaining Unit Employees (BUEs) covered by this Agreement will be notified of their selection.

## Section 6

The Union President or Authorized Union Representative may be invited to observe interviews conducted by a panel and shall be notified of the location, date, and time of the interview(s). Along with the panel members, the Union will receive documentation about the applicants to be interviewed (resume, certificates, etc.). All documentation issued to the Union must remain with the panel.

## Section 7

The Office of Human Resources Management maintains a copy of the complete vacancy announcement file for a period of two (2) full fiscal years or longer as applicable until any related grievance or appeal is formally closed. Documents relied upon for the selection process will be provided to the Union upon request.

## Section 8

A BUE will receive written notice of referrals and selections for all positions for which the employee applied. Upon written request, the following information will be provided within ten (10) workdays to the BUE who applied for the position in question:

  •  Employee response to questionnaire with answers;
  •  Employee interview assessment sheet with scores;

- Qualification Rating; and
- Reason for non-referral or non-selection.

## Section 9

Non-selection for promotion from a group of properly ranked and certified candidates, or failure to receive a non-competitive promotion, are not grievable actions. The procedures used by the Agency to identify and rank qualified candidates may be a proper subject for grievances. The parties shall resolve such grievances under the Parties' negotiated grievance procedures.

Employees and applicants who believe they have been discriminated against because of race, sex, sexual orientation, color, national origin, religion, age, disability, or retaliation may file a informal Equal Employment Opportunity (EEO) complaint within 45 calendar days of the alleged discriminatory incident, its effective date, or the date that the employee or applicant knew, or reasonably should have known, of the event or personnel action.

## ARTICLE 13
## CAREER LADDER POSITIONS

Career Ladder Positions are governed by federal laws, rules, regulations, and policies, including, but not limited to DR 4030-335-002, "Merit Promotion and Internal Placement," and this Agreement.

### Section 1
Career Ladder Positions are designed to establish a path for career advancement. Once an employee competes for and is hired to perform within a Career Ladder position, subsequent promotions, up to the full performance level (FPL) of the position, are determined at the point where the position is established and documented on the AD-332, SF-52/50, and the vacancy announcement.

When an employee's performance meets the necessary requirements listed below, the supervisor will discuss the process for promotion to the next higher level and take the proper steps to recommend the employee for a promotion. Clear, comprehensible, and attainable duties and goals needed for such promotions should be presented to the employees by supervisors in their chain of command when employees enter Career Ladder positions and at each quarterly review.

Minimum requirements for promotion consideration include:

- Time-in-Grade and other regulatory requirements;
- Grade building experience in order to meet all basic eligibility requirements;
- Demonstration of ability to perform at the next higher level; and
- Having a current rating of record of "Fully Successful" or higher.

Employees are not guaranteed promotions once selected for positions within an established career ladder, however, managers are encouraged to foster a work environment that affords individuals hired to career ladders an opportunity to demonstrate their ability to perform at the FPL and receive promotions as timely as possible.

Employees eligible for a career ladder promotion, who are certified by their immediate supervisor as having the ability to perform at the next higher level, will be promoted on the first pay period after certification (signed SF-52) takes place and the action has been approved by the servicing Human Resources Office.

Promotions above the established full performance level for career ladder positions must be made under competitive promotion procedures. A career promotion may not be made to a supervisory position.

### Section 2
Prior to an employee's eligibility date, supervisors shall review the work of each employee in a career ladder position to determine if they have met the minimum eligibility requirements. Employees who do not meet the minimum requirements for promotion may request from the supervisor an explanation outlining the reason(s) the promotion was not recommended.

Management will explain the specific performance element area(s) where the employee is lacking and advise the employee as to what he/she must do to meet the requirements for promotion. Career Ladder promotions may be recommended and may be granted at the start of any Pay Period after the employee's eligibility date. Promotions do not have to be implemented at the start of a performance year (appraisal or rating period).

## ARTICLE 14
## PERFORMANCE MANAGEMENT

Performance Management is governed by law, federal regulation, rule, policies, including DR 4040-430, "Employee Performance Management," and this Agreement.

## Section 1
It is the Agency's policy to operate a performance management program in a manner which is consistent with applicable law, rule, government-wide regulation, Departmental regulation and this Agreement.

## Section 2
The official appraisal period for which a performance plan must be prepared and monitored, and for which a rating of record must be prepared, is October 1 through September 30 of each year.

The rating of record prepared at the end of an appraisal period is for performance of assigned duties over the entirety of the applicable appraisal period.

The minimum performance appraisal period is 90 calendar days. An employee must be on a performance plan for a minimum of 90 calendar days before a rating of record can be produced.

A written performance plan will be provided to each employee within 30 calendar days of the start of the employee's new performance year. The Performance Plan will contain all of the written performance elements (critical and non-critical), and the performance standards and measures which are necessary for the employee to achieve a Fully Successful for each Element. The rating official should indicate, on the Performance Plan, how the employee can exceed the Fully Successful level.

Employee performance will be appraised utilizing a three-tiered system for Element Ratings and a five-tiered system for Summary Ratings as outlined below:

Element Rating

- Exceeds Fully Successful
- Fully Successful
- Does Not Meet Fully Successful

Summary Rating

- Outstanding
- Superior
- Fully Successful
- Minimally Satisfactory
- Unacceptable

The Employee will have three (3) workdays from the date of receipt to review the duties outlined in the Performance Plan. Upon review, employees should clarify any questions or concerns with their immediate supervisor. The employee should sign to acknowledge receipt of his/her performance plan. Refusal to sign the Performance Plan by the employee does not prevent the Plan from being implemented. Modifications may be made to a signed Performance Plan. Pen and ink changes may be made for minor modifications at any time, provided the employee is informed before the changes are made effective.

Duties and responsibilities established for an employee's position shall be in writing and communicated to the employee when the employee enters a position or when a new duty is established for the employee's position. Supervisors and employees share the responsibilities of identifying training opportunities that will improve and enhance knowledge, skills, and abilities (e.g. Individual Development Plan or employee conference).

Progress reviews by the supervisor will be conducted during the appraisal period. The supervisor will conduct quarterly reviews of the employee's performance. Supervisors are encouraged to provide feedback to all employees as frequently as is needed, as well as listen to the concerns of the employees and assist them in creating a productive workplace environment. Employees will participate in their quarterly progress reviews.

The Rating Official will be responsible for, but not limited to, proposing the employee's performance plan, providing quarterly progress reviews, and preparing the final performance appraisal rating (rating of record).

The Reviewing Official will be responsible for, but not limited to, approving the proposed performance plan and signing the final performance appraisal rating (rating of record) prior to issuance to the employee.

## Section 3
Employees will be responsible for (but not limited to):

A. Providing input to their Rating Official concerning the development of their Performance Plan;

B. Participating in their quarterly progress reviews;

C. Submitting an accomplishment report at the end of a performance year;

D. Seeking clarification on standards and measures;

E. Seeking performance feedback from their supervisor; and

F. Completing developmental assignments.

**Section 4**
A written rating of record will be issued to each employee, as soon as practicable after the end of the employee's appraisal period. Acceptable Performance is a rating of record of at least fully successful.

**Section 5**
A. If at any time during the performance appraisal period an employee's performance is determined to be unacceptable in one or more critical elements, the supervisor must:

1. Notify the employee of the performance element(s) for which performance is unacceptable; and,

2. Inform the employee of the performance requirement(s) or standard(s) that must be attained to demonstrate acceptable performance. The supervisor must inform the employee that unless his/her performance in the critical element(s) improves to and is sustained at an acceptable level, the employee may be placed on a Demonstration Opportunity (formerly referred to as a Performance Improvement Plan - PIP) and given the opportunity to improve their performance to the Meets Fully Successful (FS) level.

B. Demonstration Opportunity (DO)
The goal of a DO is to return the employee to the Fully Successful performance level. For each critical performance element in which the employee's performance is unacceptable, the supervisor must afford the employee a reasonable opportunity to demonstrate an acceptable level of performance.

The DO must include:
1. A minimum opportunity period of thirty (30) calendar days to demonstrate acceptable performance. The DO may be extended for no more than 30 days with the prior approval of the USDA Chief Human Capital Officer (CHCO).

2. Identify and describe the performance deficiencies in the performance elements and standards for which the employee's performance is at the unacceptable level.

3. Provide clear goals which are appropriate for the responsibilities of the employee's position.

4. The DO Plan must describe any assistance the supervisor will provide the employee to bring the performance up to the FS level.

5. Closely monitor the employee's performance during the DO and inform the employee at least once each week during the DO that the employee is or is not meeting performance expectations. The employee is encouraged to maintain continuous interaction with their supervisor.

6. A statement indicating that if the DO does not result in the employee's performance reaching the Fully Successful level, the employee could be reassigned, reduced in grade, or removed from their position.

C. At the conclusion of the DO, the Rating Official must determine, without delay, whether the employee has demonstrated acceptable performance as defined in the DO Plan and must notify the employee in writing of the determination within seven (7) calendar days. If the employee has failed to demonstrate acceptable performance, the Rating Official must initiate steps to take an adverse or performance-based action no later than seven (7) calendar days from the end of the DO. After the DO has concluded, there is no expectation that work performed will be considered towards the determination of acceptable performance.

D. Removal of an employee from Federal service for unacceptable performance is non-grievable and is not subject to the negotiated grievance procedures. Avenues for employees to address these issues may include EEO or MSPB as applicable.

E. If an employee has consistently demonstrated performance at the FS level for one year from the beginning of a DO and the employee's performance again falls below the FS level in any critical element, the Rating Official must afford the employee an additional DO before determining whether to propose a performance-based action.

F. A performance-based action may be proposed based upon instances of performance below the FS level which occur within a one-year period from the beginning of the DO, ending on the date of the notice of proposed action.

## ARTICLE 15
## SAFETY AND HEALTH

Safety and Health is administered pursuant to law, federal regulation, rule, policies, including Departmental Regulations (e.g. DR 4410-004, "Safety Management Program"), as amended, and this Agreement.

### Section 1
Consistent with applicable laws, Executive Orders, Occupational Safety and Health Administration requirements, as well as other applicable health and safety codes, the Agency will support the maintenance of safe and healthful working conditions for all employees. If an authorized governmental safety/health official makes a written determination there is a significant health or safety problem and the Department does not take timely action on the problem, the Agency, to the extent of its authority, will provide an appropriate remedy to address the needs of employees. The Agency and the Union will cooperate to encourage employees to work in a safe manner.

Pursuant to applicable laws and regulations, no Bargaining Unit Employee (BUE) shall be subject to restraint, interference, coercion, discrimination, or reprisal for filing a report of an unsafe or unhealthful working condition, or other participation in Agency occupational safety and health program activities, or because of the exercise by such employee on their own behalf or another BUE's behalf of any right afforded by Section 19 of the Occupational Safety and Health Act, Executive Orders, or 29 CFR § 1960. These rights include among others, the right of a BUE to decline to perform their assigned task because of a reasonable belief that under the circumstances, the task poses an imminent risk of death or serious bodily harm coupled with a reasonable belief that there is insufficient time to seek effective redress through normal hazard reporting.

### Section 2
The Agency will work with all persons, entities, or organizations which own and/or control the work space to which employees are assigned to ensure that healthy, safe working conditions are maintained, and to ensure compliance with applicable laws, rules and regulations, and this Agreement. The Agency will provide feedback to employees and the Union regarding the results of any action taken regarding the correction of safety and/or health violations.

The Agency agrees:

A. to provide information concerning Federal Employee Health Benefits and Life Insurance Programs, pre-retirement planning, retirement benefits information, and the Employee Assistance Program;
B. to make information available to employees on health benefits during open season activities, and maintain copies of offered health plans for review upon request;
C. to work with the Safety Officer/Manager as applicable, to have safe electrical equipment, and adequate light and ventilation in all work areas;
D. to provide information available through the Department about ergonomic hazards and how to prevent ergonomic-related injuries;

E. to follow the Americans with Disabilities Act and GSA regulations in providing facilities appropriate and adequate to accommodate the needs of disabled employees;

F. to make available appropriate health and safety regulations to the Union when requested; and

G. to make available for review by the Union all safety reports generated by or required by law, regulation, and/or this Agreement.

**Section 3**
The Union will encourage all BUEs to work safely with due consideration for the safety, health and comfort of all fellow employees. To avoid preventable unhealthy or unsafe working conditions, the Union will encourage respect and care for the Agency's facilities and equipment and their own work environment.

**Section 4**
Each BUE shall report any unsafe or unhealthy working conditions to his/her immediate supervisor as soon as any conditions come to his/her attention.

BUEs will not be subject to restraint, interference, coercion, discrimination, or reprisal for filing a report of an unsafe or unhealthful working condition or other participation in the Agency's Safety and Health Management Program.

The Agency will investigate the reported condition as soon as practicable.

The Agency will ensure a timely response to an employee report of hazardous conditions. No BUE will be required to work in a situation determined to pose a threat of imminent danger or significant health hazard as determined by the appropriate Safety Officer(s).

If a BUE is assigned duties which he/she reasonably believes could possibly endanger his/her health or well-being, the employee will immediately notify his/her immediate or second-line supervisor of the situation. If the supervisor cannot resolve the problem and agrees with the employee, the supervisor will, under normal circumstances, delay the assignment and refer the matter through the proper channels for appropriate action. When the supervisor does not agree with the employee's concerns, the employee has the right to seek a remedy through a normal hazard report by consulting with the Union and filing a report in accordance with the applicable agency or departmental regulations.

**Section 5**
BUEs who become injured or occupationally ill while in the performance of duties shall report the injury or illness to their supervisor immediately or as soon as practicable. The supervisor will refer the employee to the Health Unit or other medical services, as appropriate.

The supervisor will refer the employee to the Office of Workers' Compensation Program (OWCP), in the Office of Human Resources Management (OHRM), to obtain the appropriate form(s) to report the injury or illness. The Agency and employee must work together to ensure all forms are properly and timely filed in accordance with law, rule and regulation.

[References shall include, but are not limited to: Departmental Regulation DR 4430-004 "Workers' Compensation Program"; https://www.dol.gov/owcp/regs/compliance/ca-10.pdf, "What A Federal Employee Should Do When Injured At Work"]

**Section 6**
Each building in which Bargaining Unit Employees are stationed will have an Occupant Emergency Plan. The Agency will issue an annual reminder of the Occupant Emergency Program Plan.

**Section 7**
The Agency will provide first-aid kits at all building locations for use when Health Unit facilities are not available.

The Agency may offer cardiopulmonary resuscitation (CPR) training to interested employees during duty hours.

**Section 8**
The Agency currently participates in the Federal Occupational Health medical screening program administered by the U.S. Department of Health and Human Services. BUEs may contact the OHRM program manager for the Employee Assistance Program.

## ARTICLE 16
## HAZARDOUS WEATHER

### Section 1

The dismissal of Bargaining Unit Employees during hazardous weather situations will normally follow orders from the Secretary of Agriculture, the Office of Personnel Management's (OPM) Dismissal/Closure Procedures, or Presidential Executive Orders. Changes in the Agency's official hazardous weather plans will not normally be made without first giving the Union an opportunity to provide input and to request negotiations.

### Section 2

Management will implement its hazardous weather plan and OPM's Dismissal/ Closure Procedures in a manner that treats all employees fairly and equitably and ensures that safety is appropriately considered.

### Section 3

All leave requests submitted by Bargaining Unit employees during hazardous weather situations will be considered on a case-by-case basis by the supervisor.

### Section 4

Upon request, employees who are denied hazardous weather leave will be given written justification for the denial by the supervisor. Determinations of relief from duty for hazardous weather will be in accordance with Agency Policies and OPM's Dismissal/Closure Procedures.

### Section 5

A copy of OPM's Dismissal/Closure Procedures may be viewed at: https://www.opm.gov/

**ARTICLE 17**
**AWARDS**

The Awards Program is governed by law, federal regulation, rule, policies, including Departmental Regulation 4040-451-001, "USDA Employee Awards and Recognition Program" as amended, and this Agreement.

**Section 1**
The use of monetary and non-monetary awards has been proven to have a significant effect on employee morale, motivation and performance. Award programs provide recognition based on employee performance, improvement, contributions and achievements that contribute to an Agency's mission.  An effective awards program is intended to motivate and reward employees to continually strive for excellence.

**Section 2**
The Agency will equitably implement the USDA Employee Awards and Recognition Program for Bargaining Unit Employees.

All Bargaining Unit Employees may be eligible for awards and recognition.

**Section 3**
**Non-monetary awards** - are given for a specific outstanding accomplishment, such as a superior contribution on a project or assignment, a scientific achievement, an act of heroism or a cost savings. Non-monetary awards may consist of letters of appreciation, certificates, time-off and/or keepsake items.

**Monetary awards** - are given for performing well during the rating cycle (performance awards) or for a particular accomplishment, such as those described above under non-monetary awards, extra effort awards and spot awards.

A. Performance Awards - All Bargaining Unit Employees may be eligible for performance awards. These awards are given at the end of the performance cycle and employees may receive only one a year. An employee's annual performance must be at least fully successful to be eligible for a performance award in accordance with applicable regulation and policy.

B. Quality Step Increases (QSIs) - All Bargaining Unit Employees may be eligible for QSIs. QSIs are given at the end of the performance cycle and Bargaining Unit Employees may only receive one within a 52-week period. Annual performance must be outstanding to be eligible for a QSI.

C. Extra Effort Awards - All Bargaining Unit Employees may be eligible for extra effort awards. These awards may be presented individually or to groups. These awards may be given

at any time and there is no limit to the number of Extra Effort awards a Bargaining Unit Employee may receive. Amounts range from $50 to $10,000.

D.  Spot Awards - All Bargaining Unit Employees may be eligible for spot awards. These awards may only be presented individually. These awards may be given at any time and there is no limit to the number of Spot Awards a Bargaining Unit Employee may receive. Amounts range from $50 to $750.

## Section 4

The Agency agrees to annually provide the Union a list of the employees receiving awards during the fiscal year. Also, the Union will be given notification of its right to bargain the impact and implementation of any proposed changes to this Article or the awards program.

## ARTICLE 18
## POSITION DESCRIPTION

Position Descriptions are governed by law, regulation, rule, policies, including but not limited to: 5 CFR Part 511, Departmental Regulation 4020-511-001, "Position Classification" and this Agreement.

### Section 1
A Position Description is an official written statement of the major duties, responsibilities and organizational relationship of a position certified by the supervisor and classified by Human Resources Operations (HRO). An OF-08 and AD-332 (or equivalent cover sheet) shall be attached to document the certification and classification as well as pertinent position information. It in no way interferes with a supervisor's authority to assign an employee to different work on a temporary basis or change an employee's work assignment. Position Descriptions (PD) will accurately reflect the duties and functions performed by Bargaining Unit Employees.

### Section 2
Collateral duty assignments are separate, yet official duties and responsibilities that are assigned to an employee in addition to the primary duties of the position the employee occupies. Collateral duties have the following characteristics with respect to position classification:

A.  Assignments are distinct and separate from the primary duties and responsibilities of the affected position and do not constitute the primary purpose for establishing or continuing the position;
B.  Assignments do not constitute a grade-controlling duty or responsibility;
C.  Assignments are not a primary duty of the position (it constitutes less than 25% of the employee's work time); and
D.  Assignments are specific to the affected individual employee, not to all incumbents of the same PD.

The approved collateral duties will become part of the official PD of the impacted employee. An official change to a PD is required when the collateral duty requires a specific skill that is different from those in the original PD and is paramount in influence and weight, or when the collateral duty results in a change to the series, grade and/or job elements and performance standards of the original PD.

If an employee has reason to believe that there are continuing differences between the work assignments and the PD which substantially affect the accuracy of the official PD, the employee should first discuss this with their supervisor. It is the supervisor who certifies the accuracy of the content of the PD and will be able to explain the assigned duties and responsibilities.

### Section 3
If the supervisor believes the classification of the position should be reevaluated as a result of the duties that have significantly and naturally evolved since the position was last classified or the position was initially classified, the supervisor can request HRO conduct an audit/review. If the supervisor decides not to request an audit/review and the Bargaining Unit Employee disagrees, the

employee shall comply with the classification appeal process (DR 4020-511-001, "Position Classification"). The employee may pursue the negotiated grievance procedures contained in this agreement as it relates to the denial of a desk audit.

## Section 4

Planned changes in duties and responsibilities of Bargaining Unit Employees resulting from reorganizations, or the application of changes in classification standards to encumbered positions will be handled in accordance with the "RIF, Reorganization and Transfer of Function" Article of this Agreement. The Agency will ensure all positions are properly classified and employees are performing within the classified Position Description.

## Section 5

The parties agree that all employees will be paid equal pay for substantially equal work in accordance with applicable laws.

## Section 6

The Agency will provide each employee with a copy of his/her current and accurate PD, accessible through the employee's e-OPF.

## Section 7

An audit/review of a position may result in classified duties at a lower grade level and/or loss of pay. The employee and the Union will be notified thirty (30) days in advance in writing of the results of the reclassification in the event of a change to a lower grade. The memo must advise of classification appeals in accordance with DR 4020-511-001 and OPM policy and specify time limits for doing so.

## ARTICLE 19
## OVERTIME

### Section 1
The Agency and the Union recognize OASCR employees do not routinely work overtime.

### Section 2
Bargaining Unit Employees will not work overtime unless ordered and approved in writing by a management official to whom authority has been delegated.

Fair Labor Standards Act (FLSA) exempt employees may receive compensation for overtime work only if the overtime was ordered and approved by a management official authorized to order and approve overtime work, and the employee actually performs the overtime work. FLSA-exempt employees whose basic pay exceeds the minimum rate for GS-10, including any applicable locality-based comparability payment, will take compensatory time off rather than receive overtime pay. FLSA-exempt employees must use accrued compensatory time off by the end of the 26th pay period after the pay period during which it was earned, unless they are prevented by management from doing so.

The Agency may not require FLSA-nonexempt employees to accept compensatory time in lieu of overtime pay under any circumstances. FLSA-nonexempt employees may choose compensatory time off in lieu of overtime payment on a case-by-case basis, subject to approval by a management official to whom authority has been delegated. FLSA-nonexempt employees will be paid for any unused compensatory time earned if they do not use it by the end of the 26th pay period after the pay period during which it was earned and will be paid at the rate of overtime at the time of accrual.

[References include, but are not limited to: 5 U.S.C. § 5542; 5 CFR § 551]

### Section 3
An employee's FLSA Exempt or Non-Exempt status will be properly indicated on their SF-50.

# ARTICLE  20
## PAY AND ENVIRONMENTAL DIFFERENTIAL

**Section 1**

The Agency and the Union realize that Bargaining Unit Employees (BUEs) in OASCR work in an office setting which is environmentally controlled.

**Section 2**

The Union reserves the right to bargain regarding impact and implementation should BUEs in OASCR be required to work in environmentally hazardous situations.

## ARTICLE 21
## DETAILS, TEMPORARY PROMOTIONS, AND REASSIGNMENTS

Details, temporary promotions, and reassignments are options available to Management for filling temporary or permanent staffing needs, as well as opportunities for employees to gain additional skills to simultaneously further their knowledge and the mission of the Agency.

**Section 1**
Management has the right to detail, temporarily promote, or reassign employees for reasons such as emergencies, absence of employees, urgency of work to be accomplished, and training. Management will make such details, temporary promotions or reassignments in consideration of organizational needs. Management will not make a detail, temporary promotion or reassignment to avoid merit promotion principles. Where Management determines that a detail, temporary promotion or reassignment can be accomplished by using volunteers, it may announce the opportunity and equitably consider those who express an interest, among other qualified individuals.

**Section 2**
**Detail** - is the temporary assignment of an employee to a different position for a specified period of time. At the end of a detail, the detailed employee returns to their position of record, unless they are assigned to another position or they separate from service.

**Temporary Promotion** - is the temporary assignment of an employee to a higher graded position for a specified period of time. At the end of a temporary promotion, the temporarily promoted employee returns to their position of record, unless they are assigned to another position or they separate from service. Temporarily promoted employees receive the higher graded salary for the period assigned as well as time-in-grade at the higher-grade level. When appropriate, temporary promotions to higher level positions may be utilized, and selections may be made from eligible employees who express an interest in the temporary promotion and possess the requisite skills, experience, education and qualifications. Management will make permanent promotions in accordance with Government-wide law, rules, and regulations.

**Reassignment** - is a change of an employee, while serving continuously within the same agency, from one position to another without promotion or demotion. Reassignments may be accomplished by any of the following means:

- Management assesses a need and skill-set match and reassigns staff, which could benefit employees by avoiding a Reduction-in-Force (RIF), even for those employees who have not expressed a special interest in reassignment.

- Management canvasses its employees to determine interest or preference for reassignment to a specific location, organization or position encompassing different duties and responsibilities not currently being performed.

- If available, the Agency will articulate opportunities that exist. Employees must assess if they meet all applicable qualifications and requirements and may make a request to their

immediate supervisor of record.

- Granting an employee's request for reassignment based on documented personal hardship or reasonable accommodation.

The Parties agree that nothing in this Article entitles an Employee to a reassignment. Management will make reassignments in accordance with government-wide law, rules, and regulations.

## Section 3
If a detail or temporary promotion exceeds 30 consecutive calendar days, the appropriate supervisor will initiate a Request for Personnel Action (SF-52), which will document the detail for submission to the Employee's Official Personnel Folder. Details of fewer than 30 consecutive days shall be documented via email correspondence with the impacted employee(s). Emails must contain:

1. Position to be occupied by the detailed employee (Division, Series, and Grade);

2. Projected amount of time the employee is directed to serve in the subject position; and

3. Duties the employee may be asked to perform over the course of the detail. Performance feedback via email is strongly encouraged in order for employees to better assess their strengths, weakness, and suitability for future Details.

The employee's performance in a detail or temporary promotion must be considered in the employee's annual performance assessment, in accordance with performance regulations and guidance.

## Section 4
When a detail exceeds 30 consecutive calendar days, the affected employee may request appropriate training and a copy of the Position Description to which he is detailed.

The Agency has the right to determine the numbers, types, and grades of employees needed to accomplish the agency's mission or to prescribe appropriate training. Management may detail employees, including but not limited to, the following reasons:

- Meeting unusual workload demands
- Special projects or studies
- Change in mission or organization
- Employee Absences
- Cross-training or other skill-training objectives
- Succession Planning
- Emergency Response or preparedness
- Developmental assignments

## ARTICLE 22
## WORK SCHEDULES

### Section 1

The Agency's objectives, goals, and mission will be accomplished with adequate coverage to meet customer needs. Employees may not be accommodated in the same manner or be allowed an Alternative Work Schedule (AWS). Advantages of granting an AWS to employees are:

A. Lowered risk for leave abuse by allowing employees more flexibility in scheduling personal activities;
B. Improved balance of work and family obligations;
C. The ability to take advantage of educational opportunities;
D. Involvement in their community and volunteer opportunities;
E. Improved retention, institutional knowledge, and hiring of employees with fresh skills and perspectives; and
F. Potential improvement on final work products as evaluated during Performance Appraisals.

The Office of Personnel Management (OPM) defines AWS for Full-Time Employees as:

A. Flexible Work Schedules (FWS) - an 80-hour biweekly basic work requirement that allows an employee to determine his or her own schedule within the limits set by the agency. Flexible work schedules include core hours and days when an employee must be present for work.

B. Compressed Work Schedule (CWS) - an 80-hour biweekly basic work requirement that is scheduled by an agency for less than 10 workdays. CWS are always fixed schedules.

C. Maxiflex - an 80-hour biweekly basic work requirement, which contains core hours on fewer than 10 workdays in the biweekly pay period, but in which an employee may vary the number of hours worked on a given workday or the number of hours each week within the limits established for the organization. Maxiflex is a type of flexible work schedule.

All of these schedules require:

A. communication with immediate supervisors about the desire to utilize these schedules.

B. written requests, at least one pay period prior to desired changes in schedule, to the immediate supervisor (include reason, anticipated duration).

C. written, clear approval from supervisors prior to the changes taking effect.

D. employees to properly update their Master Schedule in WebTA to reflect the requested schedule after supervisory approval has been obtained.

[References include, but are not limited to: www.opm.gov; 5 U.S.C. § 6122; 5 U.S.C. § 6121(5); 5 CFR 610.102; and 5 CFR 610.111(d)]

## Section 2

Employees should recognize the importance of adequate coverage by personnel in order to ensure that the needs of stakeholders, customers, and coworkers are met, and the Agency's objectives, goals, and mission continue to be attained. Employees are not entitled to Alternative Work Schedules; however, supervisors are encouraged to fairly grant employees' requests for changes in their work schedules.

Requests for AWS or other changes in work schedules must be made by the employee to their immediate supervisor in writing using Form AD-2001 (Designation of Tour of Duty). The Supervisor must approve or disapprove the request within ten (10) workdays from the date the request was made. The schedule change should be effective no later than the start of the next pay period after supervisory approval.

Each employee's request for AWS shall be considered on its own individual merits. If an AWS request is denied or if AWS is terminated, then the Agency must articulate the business reasons (including poor performance) for the denial in writing to the employee. If no business reason is articulated or the employee feels the request was not given a fair review, the employee may utilize the Grievance process to appeal the decision. Employees must be aware of their responsibility to fulfill the duties of their properly classified Position Descriptions, regardless of the ability to utilize an Alternative Work Schedule.

If the agency determines AWS schedules have an adverse impact on the agency's mission, the agency may terminate AWS. Employees will be given 30 days advance notice or as soon as practicable.

## Section 3

Certain conditions may cause approved Alternative Work Schedules to be changed or modified, temporarily or permanently, by a supervisor. Conditions can include:

- Changes in the Agency or mission requirements;
- Employee's leave status;
- Training schedules or obligations;
- Scheduled outages, delays due to weather or emergency closures, or short-term special projects; and
- Short-term need for sufficient qualified personnel.

## Section 4

Employees attending training of more than eight hours will revert back to an eight hour per day standard tour-of-duty within that pay period. Telework cannot be used while employees are in training status.

## Section 5

The earning of credit hours must be approved by the employee's supervisor or designee. Employees will obtain approval in WebTA before working credit hours.

Employees may carry no more than 24 credit hours over to the next pay period.

## Section 6
An employee's request for a deviation from an approved tour of duty must have supervisory approval.

## Section 7
On official 8-hour Federal holidays, employees under a Flexible Work Schedule will be credited eight (8) hours of holiday leave toward their 80-hour basic work requirement for the pay period. Employees under a Compressed Work Schedule will be credited holiday leave in the amount of all the non-overtime hours they would otherwise work on that day (8, 9, or 10 hours) and which apply to their basic work requirement

[References include, but are not limited to: 5 U.S.C. § 6124, 6121(3); 5 C.F.R. 610.406(a); Office of Personnel Management (OPM)]

## Section 8
Bargaining unit employees will follow current Departmental Regulations (i.e. DR 4080-811-002) for telework to the extent it is in accordance with law, rule, government-wide regulation, and this agreement.

The Union reserves the right to Impact and Implementation bargaining in the event the Departmental Regulations are modified.

## ARTICLE 23
## LEAVE

### Section 1
Leave is governed by applicable Federal laws and regulations. Employees will submit leave requests in WebTA or any successor system, as far in advance as possible. When supervisors are considering granting or denying an employee's leave request, supervisors will review on a first-come-first-serve basis, the nature of the request, mission requirements, and whether the employee's leave request was scheduled or unscheduled. Scheduled leave is leave requested in advance of the date the leave is requested to be taken. Unscheduled leave is leave requested without advance notice of the date the leave is requested to be taken.

### Section 2
Generally, employees may request Annual Leave, Sick Leave, Funeral Leave, Voluntary Leave Transfer Program (VLTP), Family and Medical Leave (FMLA), Disabled Veterans Leave, Weather and Safety Leave, and Leave Without Pay (LWOP). Supervisors may authorize employees to be excused from duty without the loss of pay or charge to leave in appropriate circumstances (e.g. blood donation).

### Section 3
Employees will submit leave requests as far in advance as possible. Supervisors will approve or disapprove leave requests within a reasonable period, and as far in advance as practicable. Employees are encouraged to work with supervisors to reschedule disapproved leave. When approved leave is cancelled, supervisors will provide employees with a written statement explaining the cancellation; this may be done by email. Supervisors shall make every effort to work with employees to afford them the requested leave at the first available opportunity.

### Section 4
Unscheduled leave may impact the Agency's mission and the efficiency of its services. The Agency recognizes that unforeseeable events such as illness or emergencies may cause employees to request unscheduled leave. Employees and their supervisors must communicate directly and timely with each other when requesting and approving/denying unscheduled leave. Supervisors shall make every effort to work with employees to afford employees the leave being requested at the first available opportunity. Employees will notify supervisors no later than one hour after their report time when requesting unscheduled leave. Employees may be placed in an AWOL status for failure to request unscheduled leave from their supervisor. Employees will also place a request in WebTA, the official time and attendance system, at the earliest opportunity. If an employee is incapacitated or is unable to call in, the employee must provide administratively acceptable evidence or medical certification upon returning to duty.

Supervisors will provide employees with a call-in phone number or other established alternative procedure(s) of communication to request unscheduled leave. Such procedure(s) of communication is in conjunction with leave requests submitted in WebTA. Such procedure(s) should be clearly outlined and fairly administered with all employees who report to the same supervisor.

A. Unscheduled Annual Leave Request:
Supervisors may grant unscheduled annual leave based on mission requirements. When annual leave is requested in lieu of sick leave, supervisors will annotate such request in WebTA. Excessive absence due to unscheduled annual leave may be cause for disciplinary action. Supervisors may conduct written counseling(s) notifying employees of excessive absences before proposing disciplinary action.

B. Unscheduled Sick Leave Request:
Supervisors may grant unscheduled sick leave only when the need for sick leave is supported by administratively acceptable evidence. Absences due to unscheduled sick leave may be cause for disciplinary action. Supervisors may place employees on a leave restriction before proposing disciplinary action.

**Section 5**
Administratively acceptable evidence to support sick leave absences of three (3) consecutive workdays or less will normally be the employee's written statement. However, where the supervisor has a legitimate management reason for disbelieving the reason for absence, medical documentation may be required. Sick leave absences of more than three (3) consecutive workdays will be substantiated by a physician's statement and shall be considered administratively acceptable evidence.

Prior to issuing an employee a Leave Restriction Letter, supervisors will first counsel employees after establishing that the employee is not properly using sick leave, prior to formal action being taken. In the Leave Restriction Letter, the supervisor shall advise the employee in writing that he/she is required to support all future use of sick leave by a physician's statement and that his/her own written statement shall not be considered administratively acceptable evidence. The Leave Restriction Letter's requirement that employees support all use of sick leave by a physician's statement will normally not exceed six months, if the employee's absences due to illness have been satisfactorily supported to the supervisor.

**Section 6**
Tardiness may impact the Agency's mission and the efficiency of its services. Tardiness of less than one (1) hour may be excused by the supervisor for justifiable reasons. Employees may be placed in an AWOL status for failure to notify their supervisor of absences within this one-hour period.

**Section 7**
Employees who intend to use leave under the provisions of FMLA must provide notice of intent as soon as practical, in accordance with the regulation. The Agency will require medical certification(s) for leave to care for a family member with a serious health condition or the employee's serious health condition.

[References include, but are not limited to: 5 CFR 630.401-630.408]

**ARTICLE 24**
**HOLIDAYS**

<u>Section 1</u>
The following are legally observed Federal holidays applicable to Bargaining Unit Employees:

- New Year's Day, January 1
- Martin Luther King, Jr. Day, the third Monday in January
- Presidents' Day, the third Monday in February
- Memorial Day, the last Monday in May
- Independence Day, July 4
- Labor Day, the first Monday in September
- Columbus Day, the second Monday in October
- Veterans Day, November 11
- Thanksgiving Day, the fourth Thursday in November
- Christmas Day, December 25

<u>Section 2</u>
The Agency and the Union realize that employees are not required to work on holidays.

**ARTICLE 25**
**CORRECTIVE, DISCIPLINARY AND ADVERSE ACTIONS**

**Section 1**
The parties agree the public interest requires upholding efficient operations through high standards of conduct and impartially enforcing laws, rules, and regulations. Discipline is a managerial tool intended to correct employee misconduct and/or deficiencies in performance. To promote the efficiency of the service, the Agency will take the appropriate actions in accordance with applicable regulations and this Agreement.

**Section 2**
Employees may utilize the services available through the Employee Assistance Program (EAP), as outlined in Article 11.

**Section 3**
Verbal or written counseling is a corrective action used to notify an employee that a particular incident or action is inappropriate or impermissible. When taking a subsequent disciplinary action, the Agency will not consider verbal counseling as a prior offense; however, the Agency can use written counseling to show an employee was on clear notice for a particular issue or disciplinary offense. The supervisor will maintain documentation of counseling for up to one (1) year in the supervisor's file. After the one (1) year period, the supervisor will not reference the written counseling in any further disciplinary action unless it was used to support an action within the one year. There is no statutory right to representation at a counseling meeting where no disciplinary action is being discussed.

**Section 4**
Disciplinary actions are official reprimands and suspensions of fourteen (14) calendar days or less. Such actions must be taken to promote efficiency of service, and they are grievable through the negotiated grievance procedures. The Agency will take disciplinary actions in accordance with applicable regulations and this Agreement:

a. Official Reprimand - Unlike a written counseling, a written official reprimand becomes a temporary part of the employee's eOPF. An official reprimand will state the reason(s) for its issuance and inform the employee of the right to grieve the reprimand under the negotiated grievance procedures or pursue a complaint of discrimination consistent with 29 C.F.R. §1614.105(a). An official reprimand will remain in the eOPF for at least one (1) year, and not more than two (2) years, unless removed earlier as a result of a grievance decision, an arbitration decision, an EEO decision or settlement agreement, or a decision by the management official who issued the reprimand to remove it sooner than its original expiration date. In determining appropriate disciplinary action for future offenses, a supervisor may consider an official reprimand as prior misconduct for a period of up to two (2) years from the issuance of the reprimand, or a shorter period as determined by a grievance decision, an arbitration decision, an EEO decision or settlement agreement, or a decision by the management official who issued the reprimand. An authorized management designee may act in the absence of the management official who issued the reprimand.

b. Suspension of Fourteen (14) calendar days or less –

1. When a supervisor proposes a suspension of fourteen (14) calendar days or less, an employee will receive a written notice stating the specific reason(s) for the proposed action and a copy of the material, if any, relied upon to support the reason(s) in the notice. The employee will receive not less than 24 hours, and management may authorize up to three (3) workdays, to answer orally and/or in writing and may furnish affidavits and/or other documentary evidence in support of the answer.

2. An employee who has received a written notice of proposed suspension may request an extension of time in which to reply to the notice. Such request must be in writing and set forth the reasons to justify the request. The official designated to receive any reply will make a decision on such a request.

3. An employee will receive a written decision on or before the effective date of the suspension. The written decision will inform the employee of the right to file a grievance under the negotiated grievance procedures or pursue a complaint of discrimination consistent with 29 C.F.R. §1614.105(a). Employees may choose only one forum in which to file a grievance or complaint, but not both, and duplicate filings challenging the suspension are subject to immediate dismissal.

4.        Documentation of suspensions becomes a permanent part of an employee's eOPF.

**Section 5**

Adverse actions are removals, suspensions of more than fourteen (14) calendar days (including indefinite suspensions), reductions in grade or pay, and furloughs of thirty (30) calendar days or less. The Agency shall take adverse actions to promote efficiency of service, in accordance with applicable regulations and this Agreement. When a supervisor proposes an adverse action, the following will apply:

a. With the exception of furloughs, employees are entitled to at least thirty (30) calendar days advance written notice of an adverse action, except in cases where there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed, and management is proposing a removal or suspension, including an indefinite suspension.

b. In issuing the notice of a proposed adverse action, management will afford the employee no less than seven (7) calendar days to: (i) review the material relied upon to support the proposed action, and (ii) answer orally and/or in writing. The employee may furnish affidavits and other documentary evidence in support of the answer, including medical documentation.

c. A copy of the material relied upon to support the reasons given in the notice will be

provided to the employee.

    d.  An employee who has received an advance written notice of an adverse action may request an extension of time in which to reply to the notice. Such request must be in writing and must set forth the reasons justifying the request. The official designated to receive the reply will make a decision on such a request.

    e.  An employee will receive a written decision on or before the effective date of the adverse action. The written decision will inform the employee of the right to: (i) appeal to the Merit Systems Protection Board (MSPB); (ii) file an Equal Employment Opportunity (EEO) complaint of discrimination consistent with 29 C.F.R. §1614.105(a); or (iii) file a grievance under the negotiated grievance procedures for adverse actions not including removals for unacceptable performance or misconduct. Employees may choose only one forum in which to file an appeal, grievance, or complaint, but not more than one, and duplicate filings challenging the adverse action are subject to immediate dismissal.

    f.  In accordance with Executive Order 13837, removal of any employee for misconduct or unacceptable performance is non-grievable and is not subject to the negotiated grievance process. Avenues for employees to address these issues may include EEO or MSPB.

    g.  Documentation of adverse actions becomes a permanent part of an employee's eOPF.

### Section 6

An employee has the right to request representation in any examination by a management official of the Agency in connection with an investigation, if the employee reasonably believes the examination may result in disciplinary action. The employee may request representation before the meeting or at a later time in accordance with Weingarten Rights. Once representation is requested, the management official must either: (i) grant the request and delay questioning until the union representative arrives; (ii) deny the request and end the meeting immediately; or (iii) give the employee a clear choice between having the interview without representation or ending the interview.

The union representative is not limited to the role of an observer during the examination. During the meeting the union representative may: (i) request the employee receive some indication of what the investigation is about (*e.g.,* theft, workplace disputes, tardiness, etc.); (ii) seek a reasonable amount of time to speak with the employee in private before continuing with the examination or during the meeting; and (iii) ask the interviewer to clarify a question so the employee understands the question. Upon written request, the employee will receive a copy of any written statement they have provided. When no action results from an investigation, the employee who was the subject will receive notice that no action will be taken.

## ARTICLE 26
## GRIEVANCE PROCEDURES

**Section 1**

The purpose of this Article is to provide a mutually acceptable method for the prompt resolution of grievances, at a level that has control and authority to resolve the matter. The Parties agree that most grievances should be resolved in an orderly, prompt and equitable manner that promotes mutual respect and dignity to both the Employee and Management and is consistent with the principles of good management and the public interest. Most grievances arise from misunderstandings or disputes which can be resolved promptly and satisfactorily on an informal basis. In order to resolve grievances at the lowest level, the Parties agree to have open discussions between the participants of the issue.

**Section 2**

In accordance with 5 U.S.C. § 7103, a grievance is defined as any complaint by any:

    A. Employee concerning any matter relating to the employment of the employee;
    B. Labor organization concerning any matter relating to the employment of
       any employee; or
    C. Employee, labor organization, or agency concerning—
          (i) the effect or interpretation, or a claim of breach, of a collective
       bargaining agreement; or
          (ii) any claimed violation, misinterpretation, or misapplication of any law, rule, or
       regulation affecting conditions of employment.

**Section 3**

The following matters are not grievable under these procedures and are specifically excluded from the coverage of this Article:

    A. any claimed violation of 5 U.S.C. Chapter 73, Subchapter III, relating to prohibited
       political activities (Hatch Act);

    B. retirement, life insurance, health insurance or employment benefits;

    C. a suspension or removal under 5 U.S.C. § 7532 (National security reasons);

    D. any examination, certification or appointment;

    E. the classification of any position which does not result in the reduction in grade or pay of
       an employee, or loss of promotion potential;

    F. reduction-in-force or furloughs of more than thirty (30) calendar days;

    G. non-selection for promotion from a group of properly ranked and certified candidates, or
       failure to receive a non-competitive promotion;

H. termination of a probationary employee during the probationary period;

I. a preliminary warning notice of an action which, if effected, would be covered under this procedure or under a statutory appeals procedure;

J. an action which terminates a temporary promotion within a maximum period of two (2) years and returns the employee to the position from which the employee was temporarily promoted or reassigns or demotes the employee to a different position that is not at a lower grade or pay than the position from which the employee was temporarily promoted;

K. claims that have been filed, pursuant to 5 U.S.C. § 7121(g), with the Merit Systems Protection Board (MSPB) or Office of Special Counsel (OSC);

L. claims based on alleged discrimination on account of race, color, sex, age, religion, national origin, sexual orientation or non-disqualifying disability that are the subject of a formal written complaint in the equal employment opportunity (EEO) complaint process;

M. the content of a published Federal, State, County, local law or regulation, executive order, or Agency regulation, directive or policy;

N. removals for misconduct or unacceptable performance;

O. performance rating of record; and

P. the award of any form of incentive pay, including cash awards; quality step increases; or recruitment, retention, or relocation payments.

Nothing in this Agreement will affect the Employees' or the Union's right to file a grievance concerning the impact of changes in conditions of employment.

At each step of the grievance procedure, the grievances state:

- The name of the grievant;
- Specific nature of the grievance;
- The law, rule, regulation, policy, procedure, or contract article allegedly violated;
- A copy of documents related to the grievance;
- The dates and times of any prior attempt to resolve the issue, if applicable;
- Details of the violation (who, what, when, where, why, and how);
- The specific relief/remedy requested; and
- Contact information of the grievant or Union representative.

For the purpose of expediting the processing of grievances, the Parties agree that each management response/decision to the grievance will be responsive to relevant issues raised in the grievance. This information will not expand beyond the issues established at the initial step of the grievance procedure. The management response/decision will include business reasons for granting or denying any requested remedies.

The Agency has the authority to determine who may serve as the authorized management designee in Grievance Steps 1, 2, and/or 3. Management will notify the grievant of any changes to the authorized management designee.

## Section 4

A grievance may be filed by an employee or group of employees, by the Union, or by the Agency.

Only the Union, or a representative designated by the Union, may represent Bargaining Unit Employees in such grievances. However, any Bargaining Unit Employee or group of Bargaining Unit Employees may personally present a grievance and have it resolved without representation by the Union. The Union will be given an opportunity to be present at all discussions in the grievance process and receive copies of all documents. Any resolution must be consistent with the terms of this Agreement. The Parties agree to keep the number of participants at a minimum.

## Section 5

**Step 1 Grievance:**

The written and signed grievance must be filed with the grievant's immediate supervisor or the lowest level management official who has the authority to grant relief within fifteen (15) workdays of the act or occurrence or within fifteen (15) workdays after the grievant knew, or should reasonably have known, of the act or occurrence giving rise to the grievance. The grievance must specify the relief requested.

At the election of the grievant and/or the assigned Union representative, the parties will meet with the Step 1 management official in an attempt to resolve the grievance.

The Step 1 management official shall provide the grievant and the Union with a written resolution within fifteen (15) workdays of the date of receipt of the written grievance. Included with such resolution shall be a statement indicating the grievant's right to submit a grievance to Step 2, as well as, the name and title of the next level supervisor or designee authorized to hear Step 2 of the grievance procedure.

If the Assistant Secretary for Civil Rights serves as the Step 1 management official, then Steps 2 and 3 are waived. In that circumstance, included with the decision shall be a statement indicating that if the decision is not satisfactory, the Union may refer the matter to Arbitration.

**Step 2 Grievance:**

If the grievant is dissatisfied with the resolution given in Step 1, the grievant may submit the grievance, including a copy of the Step 1 response/decision received or a statement that no Step 1 response/decision was received, in writing within ten (10) workdays of receipt of the Step 1 response, or within ten (10) workdays of the date the response was due, whichever is shorter, to the next level supervisor or authorized designee. The grievance must specify the relief requested.

A meeting involving the grievant and/or their Union representative and the Management official designated to hear the Step 2 grievance may be held to resolve, discuss or clarify facts and issues that may impact the decision.

The authorized designee shall provide the grievant and the Union with a written response/decision within fifteen (15) workdays of the receipt of the Step 2 grievance. Included within such response/decision shall be a statement indicating the grievant's right to submit a grievance to Step 3. The response/decision shall specify the name and title of the next level supervisor or authorized designee to whom the grievance may be directed, if it is not resolved at Step 2.

If the Assistant Secretary for Civil Rights serves as the Step 2 management official, then Step 3 is waived. In that circumstance, included with the decision shall be a statement indicating that if the decision is not satisfactory, the Union may refer the matter to Arbitration.

**Step 3 Grievance:**

If the grievant is dissatisfied with the response/decision given in Step 2, the grievant may submit the grievance, including a copy of the Step 1 and/or Step 2 responses/decisions received or a statement that no Step 2 response/decision was received, in writing within ten (10) workdays after receipt of the response/decision of the Step 2 grievance or within ten (10) workdays of the date the response/decision was due, whichever is shorter, to the next level supervisor or authorized designee by the Agency. The grievance must specify the relief requested.

A meeting may be held to attempt to resolve the grievance at the mutual agreement of the parties.

The official listed above shall render a written response/decision within fifteen (15) workdays of receipt of the Step 3 grievance. This decision shall be the final Agency decision on the grievance. Included with the decision shall be a statement indicating that if the decision is not satisfactory, the Union may refer the matter to Arbitration.

A grievance taken in response to a written decision letter notifying the employee of an adverse action under 5 U.S.C. § 7512, other than removals, must be filed as a Step 3 grievance in writing within fifteen (15) workdays of receiving the decision letter.

If, in any step of the grievance procedure, it is determined that the authorized designee does not have the authority to resolve the grievance, the grievant will be informed and the grievance will be forwarded to the proper official. This will fulfill the grievant's obligation to meet the timetable set up in the grievance procedure; but it will not be considered as one of the steps.

<u>**Section 6**</u>
A grievance by the Agency shall be submitted in writing by the Agency to the Union President within fifteen (15) workdays of the event giving rise to the grievance. The Union will respond in writing to the grievance within fifteen (15) workdays of receipt of the grievance. The decision shall specify that it is the Union's final decision on the grievance. If the Agency is dissatisfied with the Union's decision, the Agency may request Arbitration.

**Section 7**

Time limits in this Article may be extended by mutual consent of the parties. The parties will agree to respond to a grievance within the time frames allowed. Failure by the grievant to meet time limits, or to request and receive an extension of time, shall automatically cancel the grievance, unless mitigating circumstances prevail. *Mitigating circumstances* refer to situations beyond the reasonable control of the parties, such as, but not limited to, extended military leave, extended detail or temporary duty travel, medical condition, office closure, absence of the employee's representative, or natural disaster. If the authorized designee fails to meet time limits or receive an extension of time, the grievant may appeal the grievance to the next step of the process (e.g., from Step 1 to Step 2) including Arbitration under procedures established in the Arbitration Article of this agreement.

**Section 8**

When an information request pursuant to 5 U.S.C. § 7114(b)(4) is filed, the time limits may be extended equal to the amount of time reasonably required to provide the information. The request provided by the Union shall include a "particularized need" for the information. Management will submit this information to the Union within thirty (30) workdays. If Management is unable to submit the information to the Union within thirty (30) workdays, Management will notify the Union when the information will be available and the reason(s) why the information is not currently available, provided the information is submitted within a reasonable period of time.

**Section 9**

All time limits stated in the grievance procedure may be extended by written mutual consent of the parties involved. Service of grievances and the decision thereof, including Arbitration notices, shall be accomplished either by personal delivery, U.S. mail, facsimile, electronic mail or by other recognized delivery service(s) (e.g., UPS, etc.). As applicable, time limits shall begin to run from the day following the date of receipt of the document that triggers that particular time limit. Service will be deemed timely if the required document is personally delivered, postmarked, confirmed, or receipted within the specified time limit. The parties agree that they will act in good faith in the receipting for documents and will not attempt to evade the service of documents upon them.

## ARTICLE 27
## ARBITRATION PROCEDURES

**Section 1**

If the decision of the Step 3 Grievance Official is not satisfactory, the Union or the Agency may request that the grievance be submitted to arbitration. The request for arbitration must be made within thirty (30) calendar days of the receipt of the Grievance Official's decision.

**Section 2**

Within five (5) workdays after the request for arbitration is received, the parties will jointly request a panel of seven (7) arbitrators from the roster maintained by the Federal Mediation and Conciliation Service. Within five (5) workdays after receipt of the panel, the parties will meet and attempt to select one (1) arbitrator from the panel by mutual agreement. If the parties cannot mutually agree upon an arbitrator to hear the case, the parties will alternately strike names from the panel until one (1) arbitrator remains. The remaining arbitrator shall be selected.

**Section 3**

Prior to referring the grievance to the arbitrator, the parties will meet and prepare a written joint submission, stating the specific issue(s) to be submitted to arbitration. If the parties fail to agree on a joint submission of the issue(s), each may submit a separate statement. The arbitrator may decide which party's statement is appropriate, but shall not consider other issue(s) not submitted by either party.

**Section 4**

Consistent with this Article, the arbitrator shall decide the procedures to be followed in the hearing and deciding of the grievance. The arbitrator shall be asked to render a decision, as quickly as possible; but in any event, not later than thirty (30) calendar days after the conclusion of the hearing.

**Section 5**

The arbitrator is authorized only to apply the existing provisions of this Agreement to the specific facts involved; and to interpret applicable provisions of the Agreement. An arbitrator will not:

> Mandate any abatement procedure involving the application of safety and health policies, regulation or standards (although the arbitrator may recommend or suggest a procedure).

**Section 6**

Any arbitration hearing will normally be held at the Agency during the regular day shift hours of the basic workweek. Employees who are called to testify as witnesses at a hearing shall be on official time if they are otherwise in an active duty status.

**Section 7**

The decision of the arbitrator is binding except that either party may file an exception to the award

with the Federal Labor Relations Authority as permitted by law and regulation.

## Section 8

All fees and expenses of the arbitrator shall be shared (Management - 50% and Union - 50%) by the Parties. If the arbitrator requests a transcript, such transcript will be included in the shared fees. If either party requests a transcript, this cost shall be paid by the requesting party.

## ARTICLE 28
## RIF, FURLOUGH, REORGANIZATION AND TRANSFER OF FUNCTION

**Section 1**

In the event of a proposed Reduction-in-Force (RIF), Furlough, Reorganization and/or Transfer of Function at OASCR that involves Bargaining Unit employees, Management will notify the Union in writing and fulfill its obligation to bargain in good faith consistent with 5 U.S.C. Chapter 71.

[References include, but are not limited to: 5 U.S.C. Chapter 71; 5 C.F.R. 330.604 and 351; USDA DR 4030-330-002]

**Section 2**

In the event of a Reorganization and/or Transfer of Function, Management will provide notification to the Union concerning the proposed Reorganization and/or Transfer of Function at least 45 calendar days prior to implementation. The notification should include:

- Description of the change or proposed change;
- An explanation of how the change will be implemented;
- Date of implementation or proposed implementation; and
- Any known impacts.

A Demand to Bargain may be submitted within 14 calendar days after notification has been received by the designated Union representatives. A Demand to Bargain is a request to negotiate and may include a request for Impact and Implementation (I&I) bargaining. Designated representatives from either Party may request a meeting to discuss the details of the proposed Reorganization and/or Transfer of Function.

The I&I process will conclude no later than 14 calendar days prior to the start of the Reorganization.

Any modifications to the proposed Reorganization and/or Transfer of Function will result in a new 14 calendar day period to submit a Demand to Bargain only on the modifications.

The Union will provide the following information when submitting a request for I&I Bargaining:

- Proposals reasonably related to the proposed changes;
- Identify (if known) the adverse impacts of affected employees
- An explanation of the identified adverse impacts; and
- Recommended procedures and/or appropriate arrangements to reduce/remedy adversely affected employees.

The terms of any resolutions or outcomes reached during I&I Bargaining shall be written and signed by both Parties.

Management will notify the employees of the Reorganization and Transfer of Function no later than 30 calendar days prior to implementation. Union representatives will not preempt notification to the employees.

**Section 3**
Information contained in this section relates to furloughs of 30 calendar days or less. Management will notify the Union as soon as possible and follow the guidelines as stipulated by the Office of Personnel Management (OPM) and U.S. Department of Agriculture when furloughs may be utilized.

An **administrative furlough** is a planned event by an agency which is designed to absorb reductions necessitated by downsizing, reduced funding, lack of work, or any budget situation other than a lapse in appropriations. Furloughs that would potentially result from sequestration would generally be considered administrative furloughs. The Parties will negotiate in good faith in accordance with 5 U.S.C. Chapter 71.

(References include, but not limited to: 5 CFR 752.404/405/406)

A **shutdown furlough** (also called an emergency furlough) occurs when there is a lapse in appropriations and can occur at the beginning of a fiscal year if no funds have been appropriated for that year, or upon expiration of a continuing resolution if a new continuing resolution or appropriations law is not passed. In a shutdown furlough, an affected agency would have to shut down any activities funded by annual appropriations that are not excepted by law. Typically an agency will have very little to no lead time to plan and implement a shutdown furlough. Shutdown/Emergency Furlough instructions will be sent to all employees.

(References include, but not limited to: Pay and Leave Furlough Guidance as outlined by the OPM and USDA Guidance)

A website address will be provided to give employees the ability to receive updates on furloughs.

**Section 4**
A Reduction-in-Force or a Furlough of 30 calendar days or more are covered under, but not limited to 5 CFR 351, OPM guidance and USDA policy. The Parties will negotiate in good faith in accordance with 5 U.S.C. Chapter 71.

A website address will be provided to give employees the ability to receive updates on RIFs and Furloughs.

**ARTICLE 29**
**CONTRACTING OUT**

The Agency will notify the Union when it exercises its discretion to contract out work normally performed by Bargaining Unit Employees. The Agency will provide the Union with information concerning the proposed contracted work to determine the need for Impact and Implementation (I&I) bargaining in accordance with the terms of Article 7 of this Agreement, Mid-Term Bargaining and Negotiations.

[References include, but are not limited to, 5 U.S.C. § 7114(b)(4)]

**ARTICLE 30**
**CONCERTED ACTIVITY**

<u>Section 1</u>
The Union agrees that it will not encourage, initiate, participate or condone strike, work stoppage or slowdown on the part of a Bargaining Unit Employee (BUE) or group of BUEs. The Parties agree that stoppage or slowdown would harm or adversely affect the operations or missions of the Agency; and the Union will not condone such activity by failing to take affirmative actions to prevent or stop it.

<u>Section 2</u>
Management agrees that it will not lock out BUEs except in cases of emergencies, furloughs, safety and health reasons, or when mandated by Congressional, Presidential, or Office of Personnel Management order(s).

## ARTICLE 31
## INFORMATION AND PUBLICITY

**Section 1**
Copies of this Agreement shall be posted on a designated USDA electronic platform. The Union shall be furnished with an electronic copy.

**Section 2**
Management agrees to allow reasonable space for the posting of Union literature and material on presently designated official bulletin boards.

    A. The Union has the right to directly post literature on its bulletin board space with no prior approval or review by Management.

    B. The Union is responsible for all information posted on its bulletin boards. The Union agrees that information posted or distributed must not:

        1. Violate any law, regulation, this Agreement, or the security of the USDA; or
        2. Contain slanderous/libelous material regarding any individual, the USDA, or the Federal Government.

**Section 3**
Union representatives may distribute Union literature in work areas on their own time, as long as the distribution does not interfere with the Agency's mission.

**Section 4**
The Union agrees to provide the Agency a current list of the names, addresses and telephone numbers of its representatives, annually and as changes occur.

**Section 5**
Management agrees to electronically distribute and/or provide the names, work locations, and telephone numbers of the Union President and stewards, as well as a link to AFGE Local 3147 provided by the Union, to Bargaining Unit Employees on an annual basis. Management may cc the Union.

**Section 6**
The Union may use E-mail to communicate with employees. However, the Union will not use E-mail to communicate partisan political material.

[References include, but are not limited to: The Hatch Act of 1939, as amended]

## ARTICLE 32
## DUES WITHHOLDING

**Section 1**

This Article prescribes the procedures for eligible employees who are members of the Union to pay Union dues through voluntary allotments from their compensation.

The Union will inform and educate its members on the voluntary nature for allotment of Union dues, including the conditions under which the allotment may be cancelled.

**Section 2**

To be eligible to make a voluntary allotment for Union dues, an employee must:
- be a member in good standing of the Union;
- be a member of the OASCR bargaining unit; and
- have a regular net salary, after other legal and required deductions, sufficient to cover the amount of the authorized allotment for dues.

**Section 3**

A. To initiate a voluntary allotment for Union dues, employees will obtain the "Request for Payroll Deductions for Labor Organization Dues" – Standard Form (SF) 1187, from their designated Union representative. The employee will fill out their portion of the form and return the completed form to their designated Union representative.

B. The Local Union President or any Local officer will verify the employee's information, ensure the form is correctly filled out, certify the SF-1187, email the SF-1187 to DM_HRoperations@dm.usda.gov (Payroll Office email mailbox) and cc the employee and OASCR Human Resources liaison. Submission of this form constitutes receipt.

C. The Office of Human Resources Management Payroll Office (OHRM Payroll Office) will notify the OASCR Human Resources liaison of the effective dues deduction date. The Union representative and employee will remain in contact with the OASCR Human Resources liaison until a response is received from the OHRM Payroll Office.

D. The deductions certified on the SF-1187 by the authorized Union official shall be the dollar amount of regular dues, exclusive of initiation fees, assessment, back dues, fines, and similar charges and fees. One standard amount for all employees or different amounts of dues for different employees may be specified.

E. The Union will inform the OHRM Payroll Office of any change in the amount or formula for membership dues.

F. Dues will be remitted by electronic funds transfer (EFT) each pay period to the bank account designated by the Union. The Union representative and employee have a mutual responsibility to ensure deductions are effected in a timely manner.

G. The employee and the Union representative have a mutual responsibility to assure continuation of an employee's allotment for Union dues when the employee is assigned or promoted to another position within the OASCR bargaining unit.

[References include, but are not limited to SF-1187]

**<u>Section 4</u>**

A. To cancel a voluntary allotment of Union dues, the employee will complete "Cancellation of Payroll Deductions for Labor Organization Dues" - SF-1188 and submit the SF-1188 to the designated Union representative. The Local Union President or designated representative will email the SF-1188 to <u>DM_HRoperations@dm.usda.gov</u> (Payroll Office email mailbox), and cc the employee and OASCR Human Resources liaison.

B. Such cancellation will not be effective, however, until the first full pay period which begins on or after the next established cancellation date of the calendar year after the cancellation is received in the OHRM Payroll Office.

C. The employees/members will not be able to cancel their allotments prior to the one (1) year anniversary of the start of their dues withholding election (effective date SF-1187 issued by the OHRM Payroll Office).

D. The OHRM Payroll Office will notify the OASCR Human Resources liaison of the effective cancellation date. The Union representative and employee will remain in contact with the OASCR Human Resources liaison until the appropriate response is received from the OHRM Payroll Office.

E. The Union representative, employee, and OHRM Payroll Office have a mutual responsibility to ensure cancellations are processed timely.

[References include, but are not limited to, SF-1188]

## ARTICLE 33
## DURATION

<u>Section 1</u>
The effective date of this Agreement, including any supplement(s) or amendment(s), shall be the date of its approval by the Agency Head. If the head of the Agency does not approve or disapprove the Agreement within thirty (30) days from the date the Agreement is signed by the Parties, the Agreement shall take effect and shall be binding on the Parties subject to the provisions of 5 U.S.C. Chapter 71 and any other applicable law, rule or regulation.

<u>Section 2</u>
This Agreement shall be in full force and effect for five (5) years from the date of its approval and remain in full force and effect until a new Collective Bargaining Agreement is signed and implemented by all interested parties. If the Parties do not open this Agreement for renegotiations by the expiration date, the Agreement will roll over for periods of one-year increments.

Either Party may give written notice to the other, not more than one-hundred and eighty (180) calendar days prior to the expiration date of the 5-year Agreement or the expiration date of any one-year rolled over period, of their intent to renegotiate this Agreement. Upon such written notice, negotiations of the Ground Rules shall commence within 30 calendar days of delivery of the written notice, unless both Parties agree to a different timeframe. The notifying party will follow up, if necessary, to ensure delivery.

Ground Rules shall be established and signed by both Parties prior to the exchange of proposals and/or Articles.

<u>Section 3</u>
Upon approval, this Agreement will supersede and cancel all Articles contained within the previous Collective Bargaining Agreement and will serve as the principal agreement between the parties.

## Acknowledgements

This Collective Bargaining Agreement is the result of the dedication and efforts by the Negotiation Team, OASCR office staff, Bargaining Unit Employees, and representatives from the Federal Mediation and Conciliation Service (FMCS).

**The Negotiation Team**
- Winona Lake Scott - OASCR Chief Negotiator
- Ashaki "Teddi" Mitchell - AFGE Local 3147, Chief Negotiator
- Curtis Kibler - OHRM, Labor Relations Specialist
- Claudette Joyner - AFGE Local 3147 Representative
- Anika Patterson - OASCR, Team Lead, Senior Equal Opportunity Specialist
- Tonya Ahmed - AFGE Local 3147, Representative
- Jeff Knishkowy - OASCR, Special Counsel
- Charles Smith - AFGE Local 3147, Representative
- Cinnamon Butler - OASCR, Chief, Program Adjudication Division
- Antoinette Turner - FMCS, Commissioner

**Special Thanks**
- Naomi C. Earp - OASCR, Deputy Assistant Secretary for Civil Rights
- Gwen Edmonson - OASCR, Staff Assistant
- Laura Poppendeck - FMCS, Commissioner
- Peter Winch - AFGE, District 14 Representative

In accordance with 5 U.S.C. § 7114, if the Head of the Agency does not approve or disapprove the Agreement within the 30-day period, the Agreement shall take effect and shall be binding on the Parties subject to the provisions of Chapter 71 and any other applicable law, rule, or regulation.

**FOR MANAGEMENT**

NAOMI EARP  Digitally signed by NAOMI EARP  Date: 2019.12.04 15:05:12 -05'00'   **12/04/19**

Naomi C. Earp                                   Date
U.S. Department of Agriculture
Office of the Assistant Secretary for Civil Rights
Deputy Assistant Secretary for Civil Rights

**FOR THE UNION**

ASHAKI MITCHELL  Digitally signed by ASHAKI MITCHELL  Date: 2019.12.03 15:20:38 -05'00'   **12/03/19**

Ashaki "Teddi" Mitchell                      Date
American Federation of Government Employees, Local 3147
Chief Negotiator

Collective Bargaining Agreement between AFGE Local 3147 and USDA OASCR

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the Agency Head Review was served on this day, December 20, 2019, to the following parties of the Office of the Assistant Secretary for Civil Rights and the AFGE Local 3147 regarding the resubmitted CBA:


Naomi C. Earp, Deputy Assistant Secretary for Civil Rights, OASCR
Naomi.Earp@usda.gov                                                          via E-mail


Winona M. Scott, Associate Assistant Secretary for Civil Rights, OASCR
Winona.Scott@usda.gov                                                        via E-mail


Curtis R. Kibler, Senior Labor Relations Specialist, Labor Relations Branch, OHRM
Curtis.Kibler@usda.gov                                                       via Email


Claudette L. Joyner, President, AFGE Local 3147
Claudette.Joyner@usda.gov                                                    via E-mail


Ashaki "Teddi" Mitchell, Chief Negotiator, AFGE Local 3147
Teddi.Mitchell@usda.gov                                                      via E-mail


MYRON GREENHOW   Digitally signed by MYRON GREENHOW
                 Date: 2019.12.20 14:21:07 -05'00'

Myron Greenhow, Senior Labor Relations Specialist
Labor Relations and Litigation Division, OHRM
Jamie L. Whitten Building, Room 318-W
1400 Independence Avenue, SW, Mail Stop 9611
Washington, DC 20250
Phone: (202) 720-2809