

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

Rhonda Chase a/k/a
Callie B.,[1]
Complainant,

v.

Thomas J. Vilsack,
Secretary,
Department of Agriculture,
Agency.

Appeal No. 2022003796

Agency No. USDA-CCD-2021-00167

<u>DECISION</u>

On July 1, 2022, Complainant filed an appeal[2] with the Equal Employment Opportunity Commission (EEOC or Commission), pursuant to 29 C.F.R. § 1614.403(a), concerning her equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq. and the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 et seq.

<u>BACKGROUND</u>

At the time of events giving rise to this complaint, Complainant worked as a GS-0260-13 Equal Employment Specialist in the Agency's Office of the Assistant Secretary for Civil Rights (OASCR), Center for Civil Rights Enforcement (CCRE), Employment Adjudication Division (EAD) in Washington, D.C.[3] Complainant's immediate supervisor was the EAD Director. Report of Investigation (ROI) at 123, 491.

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.
[2] This initially premature appeal has since been cured by the Agency's issuance of its final decision on July 28, 2022.
[3] Because Complainant alleged discrimination by officials in the Agency's OASCR, the Agency handled her EEO complaint as a conflict of interest case.

Complainant was born in 1965 and identified her color as light skin. ROI at 123. According to Complainant, she engaged in protected EEO activity in 2015 and 2016. ROI at 124-25. The EAD Director stated that, although he was not involved in Complainant's prior protected activity, he was generally aware that she had an issue with her then-supervisor because she approached him at that time and asked if he would consider her for positions in the EAD. ROI at 491.

In 2020, Complainant applied for the GS-0260-14 Equal Employment Specialist (Leader) position in EAD advertised under vacancy announcement number OASCR-EAD-10891156-20-TT. ROI at 717-20. Complainant's name did not appear on the initial certificate of eligibles with 14 candidates issued on October 16, 2020. ROI at 753-54. Complainant's name appeared on an amended certificate of eligibles issued on October 21, 2020, with 16 candidates. ROI at 755-56. On the amended certificate of eligibles, Complainant's rating was 96 out of a possible total of 100 points. ROI at 755. Candidates with a rating of 98 or higher were invited to interview for the EAD Team Lead vacancy and, based on her rating, Complainant was not invited to interview. ROI at 493-94. Complainant stated that a coworker with brown skin who was also left off the initial certificate of eligibles (Coworker-1) was invited to interview and alleged that color was therefore a factor. ROI at 132-33, 137-38. The interview panel jointly conducted interviews for the EAD Team Lead vacancy as well as a separately advertised GS-0264-14 Team Lead position in the Employment Investigation Division (EID). ROI at 625-70. The EAD Director was the selecting official for the EAD Team Lead position. ROI at 495. The selectee for the EAD Team Lead position (Selectee-1) received a rating of 100. ROI at 754, 756. According to Complainant, Selectee-1 was approximately 38 years old at the time of her selection, and her age was a factor in her selection. ROI at 130, 136-37.

According to Complainant, during a virtual June 24, 2021, OASCR All Hands meeting held via Microsoft Teams, the EAD Director made "discriminating remarks" about her, insinuating that she was a hostile, disgruntled, difficult, and/or unprofessional employee. Supplemental ROI (SROI) at 15-16. Complainant stated that, while introducing the EAD staff, the EAD Director stated that Complainant handled compliance "and probably want[ed] to curse him [the EAD Director] out sometimes." SROI at 16. Complainant alleged that the EAD Director attacked her character with these remarks, noting, "As a Christian and one of Jehovah's Witnesses, I never use profanity. I was highly offended. He defamed my character, my name, and my religion."[4] SROI at 16. Complainant averred that she was the only EAD employee to whom the EAD Director referred in a negative light. SROI at 16. Complainant emailed the EAD Director on June 24, 2021, stating that she was offended by his comments at the meeting, but she noted that the EAD Director did not respond until after she escalated her concerns by forwarding them to higher management, including the CCRE Executive Director. SROI at 16-17, 31-33, 65-66.

On July 13, 2021, Complainant emailed the EAD Director, asking, "I am just curious, what happened to the awards that you spoke about last quarter? I have heard that others have received them, but I did not get anything yet. So, what happened to mine?" SROI at 36.

---

[4] Complainant does not allege discrimination based on religion.

On July 13, 2021, the EAD Director forwarded Complainant's email to the CCRE Program Complaints Division (PCD) Director and to the Acting Chief of Staff for the Office of the Assistant Secretary for Administration ("the Acting Chief of Staff"), stating, "FYSA". SROI at 35. On July 13, 2021, the Acting Chief of Staff offered to follow up with the Office of Human Resource Management (OHRM). SROI at 34-35. On July 13, 2021, the EAD Director responded to the Acting Chief of Staff that he had forwarded Complainant's email by mistake and that there was no need for the Acting Chief of Staff to follow up with OHRM. SROI at 34. The EAD Director explained that, in this case, it was not that OHRM was slow processing awards, but rather that only one person in his division submitted justification for an award that fit within the new criteria of extra effort that was outside of regular work. SROI at 34. According to Complainant, the Acting Chief of Staff's position of record was the CCRE Conflict Complaints Division Director, and both the PCD Director and the Acting Chief of Staff were interview panelists for the EAD Team Lead position for which Complainant was not selected in 2020 and were close friends with the EAD Director. SROI at 19-20. Complainant questioned why the EAD Director forwarded her email to other CCRE Division Directors who were not in her chain of command. SROI at 19-21. Complainant alleged that she did not receive an award because she filed an EEO complaint regarding her nonselection, noting that this was the first time she did not receive an extra effort of performance award since she began working in the EAD in 2016. SROI at 21. Complainant averred that she took on additional responsibilities while the EAD was short staffed. SROI at 21-22.

On January 15, 2021, Complainant initiated contact with an EEO counselor. On February 8, 2021, Complainant filed an EEO complaint alleging that the Agency discriminated against her on the bases of color (light skin), age (born in 1965), and reprisal for prior protected EEO activity when:

1.   On December 8, 2020, she became aware that she had not been selected for the GS-0260-14 Equal Employment Specialist Team Leader position advertised under vacancy announcement number OASCR-EAD-10891156-20-TT; and

2.   In May 2020, management denied her request to temporarily detail into the role of Acting Equal Employment Specialist Team Lead.

The Agency dismissed claim (2) pursuant to 29 C.F.R. § 1614.107(a)(2) for untimely EEO counselor contact. Complainant responded, objecting to the dismissal of claim (2) and asserting that the Agency also ignored 11 other issues raised in her EEO complaint. The Agency declined to reverse the procedural dismissal or modify the accepted claim, characterizing the remaining allegations as not rising to the level of harassing conduct but noting that they could be considered as background information.

On July 13, 2021, Complainant requested to amend her EEO complaint, alleging that the Agency discriminated against her on the bases of color (light skin), age (born in 1965), and reprisal for prior protected EEO activity  when:

4                                                                    2022003796

3.      On June 24, 2021, management made discriminating remarks about her during a
        recorded OASCR All Hands meeting; and

4.      On July 13, 2021, management forwarded her email questioning the status of her
        performance award to the same panel members included in her nonselection for
        vacancy announcement number OASCR-EAD-10891156-20-TT.

On August 6, 2021, the Agency provided Complainant with a copy of the report of investigation
for claim (1) and notice of her right to request a hearing before an Equal Employment
Opportunity Commission Administrative Judge (AJ), which Complainant received on August 12,
2021. On September 10, 2021, Complainant requested the issuance of a final decision pursuant
to 29 C.F.R. § 1614.110(b).

On August 10, 2021, the Agency accepted claims (3) and (4) for a supplemental investigation.
On December 23, 2021, the Agency provided Complainant with a copy of the supplemental
report of investigation and notice of her right to request a hearing before an EEOC AJ. On
January 25, 2022, Complainant again requested the issuance of a final decision pursuant to 29
C.F.R. § 1614.110(b).

On July 1, 2022, Complainant filed the instant appeal.

On July 28, 2022, the Agency issued a final decision in accordance with Complainant's request.
The decision concluded that Complainant failed to prove that the Agency subjected her to
discrimination as alleged.

## ANALYSIS AND FINDINGS

As this is an appeal from a decision issued without a hearing, pursuant to 29 C.F.R.
§ 1614.110(b), the Agency's decision is subject to de novo review by the Commission. 29 C.F.R.
§ 1614.405(a). See Equal Employment Opportunity Management Directive for 29 C.F.R. Part
1614 (EEO MD-110), at Chapter 9, § VI.A. (Aug. 5, 2015) (explaining that the de novo standard
of review "requires that the Commission examine the record without regard to the factual and
legal determinations of the previous decision maker," and that EEOC "review the documents,
statements, and testimony of record, including any timely and relevant submissions of the
parties, and . . . issue its decision based on the Commission's own assessment of the record and
its interpretation of the law").

*Untimely Final Agency Decision*

Complainant contends that the Agency failed to issue a timely final decision in accordance with
EEOC regulations and requests sanctions against the Agency. The Commission's regulation
found at 29 C.F.R. § 1614.110(b) requires that an agency issue a final decision within 60 days of
receiving notification of a request for a final decision.

We take this opportunity to remind the Agency of its obligations under our regulations. EEOC Regulation 29 C.F.R. § 1614.110(b) specifies that when an agency receives a request for an immediate final decision or decides to issue a final decision due to a complainant's failure to request a hearing, it must issue the final decision within 60 days. See, e.g., Vunder v. U.S. Postal Serv., EEOC Appeal No. 01A55147 (May 12, 2006). Complainant requested the issuance of a final decision by email on January 25, 2022, so the Agency was required to issue its final decision by March 28, 2022. See 29 C.F.R. § 1614.604(g). The Agency issued its final decision on July 28, 2022. Although the Agency failed to issue a timely decision as required by regulation, in this instance, the Commission does not find that the circumstances warrant the imposition of a sanction.

*Procedural Dismissal and Framing of Claims, Fragmenting of Claims, and Conflict of Interest*

On appeal, Complainant contends that the Agency erred in dismissing claim (2) and in ignoring the other issues raised in her complaint and in her response to the procedural dismissal. Complainant also argues that the Agency fragmented her complaint by investigating the amendment with a supplemental investigation. According to Complainant, her EEO complaint was not properly handled as a conflict of interest.

The Agency dismissed claim (2) pursuant to 29 C.F.R. § 1614.107(a)(2) for untimely EEO counselor contact. EEOC Regulation 29 C.F.R. § 1614.107(a)(2) states that the Agency shall dismiss a complaint or a portion of a complaint that fails to comply with the applicable time limits contained in §§ 1614.105, 1614.106 and 1614.204(c), unless the Agency extends the time limits in accordance with § 1614.604(c). EEOC Regulation 29 C.F.R. § 1614.105(a)(1) provides that an aggrieved person must initiate contact with an EEO counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action. EEOC Regulation 29 C.F.R. § 1614.105(a)(2) allows the Agency or the Commission to extend the time limit if the complainant can establish that Complainant was not aware of the time limit, that Complainant did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, that despite due diligence Complainant was prevented by circumstances beyond her control from contacting the EEO counselor within the time limit, or for other reasons considered sufficient by the Agency or Commission.

Complainant alleges that, in May 2020, the EAD Director denied her request for a detail in the Acting EAD Team Lead position. Complainant initiated EEO counseling on January 15, 2021, but she alleged that she was not aware of the discrimination until she learned that Selectee-1 was selected for the EAD Team Lead position. However, we agree with the Agency's determination that the denial of her request for a detail was a discrete act, and we find that Complainant has not offered sufficient justification for extending the time limit. We also do not find that the Agency erred in framing Complainant's claims. Upon review of Complainant's complaint, the EEO counselor's report, and her correspondence with the Agency, we find that the additional issues raised by Complainant were appropriately considered as background.

Complainant asserts that the Agency improperly fragmented her complaint because the amendment was investigated separately from claim (1). Fragmenting refers to the breaking up of a complainant's legal claim during EEO complaint processing. EEO MD-110, at Chap. 5 § III. EEOC Regulation 29 C.F.R. § 1614.106(d) permits a complainant to amend a pending EEO complaint to add claims that are like or related to the claim(s) raised in the pending complaint at any time prior to the agency's mailing of the notice required by 29 C.F.R. § 1614.108(f) at the conclusion of the investigation. Here, Complainant requested to amend her complaint on July 13, 2021. The record reflects that the EEO investigator submitted the investigative report for claim (1) to the Agency on August 6, 2021. ROI at 105. Complainant stated that she received the ROI and notice of the right to request a hearing on August 12, 2021. The Agency accepted claims (3) and (4) as amendments on August 10, 2021, and issued a revised acceptance letter on August 17, 2021, to correct two typos. SROI at 1-4. We find that the Agency properly amended Complainant's complaint pursuant to 29 C.F.R. § 1614.106(d). Chapter 5 § III.B.2 of EEO MD-110 provides that, when an agency concludes that a new claim is like or related to the claim(s) raised in a pending complaint, the agency should instruct the EEO investigator who is investigating the complainant's pending complaint to include the new incident(s) in the investigation. Upon review, the record reflects that Complainant requested to amend her complaint as the investigation of claim (1) was concluding and that the ROI was complete before the Agency accepted the amendment. Accordingly, given the timing, the Agency properly requested a supplemental investigation of the amendment and issued one final decision on all of the claims. We therefore do not find that the Agency fragmented Complainant's claims.

Chapter 1 of EEO MD-110 provides that agencies must avoid conflicts of position or conflicts of interest, as well as the appearance of such conflicts. EEO MD-110, at Chap. 1, § IV.A. For example, the same agency official(s) responsible for executing and advising on personnel actions may not also be responsible for managing, advising, or overseeing the EEO pre-complaint and complaint process. Id. Chapter 9 of EEO MD-110 also provides that when an employee files a complaint alleging discrimination by the EEO Director or another supervisor in the EEO office, a real or perceived conflict may exist because the interests of the responding official would challenge the objectivity or perceived objectivity of the EEO office. EEO MD-110, at Chap. 9 § IV.B.2. This matter must be addressed through procedures designed to safeguard the integrity of the EEO complaint process. Id. For example, when an EEO complaint alleges that the EEO Director or a member of his/her immediate staff discriminated, the EEO Director shall recuse himself/herself and retain a third party to conduct the counseling, and investigation and draft the final agency decision for the agency head to issue. Id.

Complainant named officials in the OASCR as responsible management officials in her EEO complaint. Upon review, we find no indication that officials in the OASCR tainted the EEO process. The United States Postal Service National EEO Investigative Services Office (NEEOISO) processed the case and issued the final decision on behalf of the Agency. Complainant objected to the CCD Team Lead contacting her in January 2021 regarding her request for EEO counseling. Upon review, the CCD Team Lead requested intake information from Complainant so an EEO counselor could be assigned. ROI at 265-68. A contract NEEOISO EEO counselor conducted EEO counseling for Complainant. ROI at 58-86.

7                                                                    2022003796

There is no indication that any officials in the OASCR had any influence over the processing of the complaint, the investigation, or the final decision. Accordingly, we find that there was no conflict of interest in the processing of Complainant's EEO complaint.

*Discrimination and Harassment Based on Color, Age, and Reprisal*

Complainant alleged that she was subjected to discrimination and harassment based on color, age, and reprisal.

To prevail in a disparate treatment claim, Complainant must satisfy the three-part evidentiary scheme fashioned by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). She must generally establish a prima facie case by demonstrating that she was subjected to an adverse employment action under circumstances that would support an inference of discrimination. <u>Furnco Constr. Co. v. Waters</u>, 438 U.S. 567, 576 (1978). The prima facie inquiry may be dispensed with in this case, however, since the Agency has articulated legitimate and nondiscriminatory reasons for its conduct. <u>See</u> <u>U.S. Postal Serv. Bd. of Governors v. Aikens</u>, 460 U.S. 711, 713-17 (1983); <u>Holley v. Dep't of Veterans Affairs</u>, EEOC Request No. 05950842 (Nov. 13, 1997). To ultimately prevail, Complainant must prove, by a preponderance of the evidence, that the Agency's explanation is a pretext for discrimination. <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 (2000); <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 519 (1993); <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981); <u>Holley</u>, <u>supra</u>; <u>Pavelka v. Dep't of the Navy</u>, EEOC Request No. 05950351 (Dec. 14, 1995).

To establish a claim of harassment a complainant must show that: (1) she belongs to a statutorily protected class; (2) she was subjected to harassment in the form of unwelcome verbal or physical conduct involving the protected class; (3) the harassment complained of was based on the statutorily protected class; (4) the harassment affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability to the employer. <u>See</u> <u>Henson v. City of Dundee</u>, 682 F.2d 897 (11th Cir. 1982). Further, the incidents must have been "sufficiently severe or pervasive to alter the conditions of [complainant's] employment and create an abusive working environment." <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21 (1993). The harasser's conduct should be evaluated from the objective viewpoint of a reasonable person in the victim's circumstances. <u>Enforcement Guidance on Harris v. Forklift Systems Inc.</u>, EEOC Notice No. 915.002 at 6 (Mar. 8, 1994).

Reprisal claims are considered with a broad view of coverage. <u>See</u> <u>Burlington Northern and Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 67-68 (2006); <u>see also</u>, <u>Carroll v. Dep't of the Army</u>, EEOC Request No. 05970939 (Apr. 4, 2000). Retaliatory actions which can be challenged are not restricted to those which affect a term or condition of employment. <u>Id.</u> Rather, a complainant is protected from any discrimination that is reasonably likely to deter protected activity. <u>Id.</u>; <u>see also</u>, <u>Carroll</u>, <u>supra</u>.

To ultimately prevail on a claim of retaliatory harassment, Complainant must show that she was subjected to conduct sufficient to dissuade a "reasonable person" from making or supporting a charge of discrimination. See Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006); EEOC Enforcement Guidance on Retaliation and Related Issues, EEOC Notice No. 915.004, § II(B)(3) & n. 137 (Aug. 25, 2016).

The Agency's legitimate, nondiscriminatory explanation for Complainant's name not appearing on the initial certificate of eligibles for the EAD Team Lead vacancy was that a HR Specialist initially rated Complainant as ineligible based on missing documents. The HR Specialist explained that she was unfamiliar with the format of the performance appraisal submitted by Complainant and thought it was a performance plan. ROI at 534. When the HR Specialist did a quality review of recently issued certificates, she discovered the mistake and added Complainant, as well as Coworker-1, to the certificate of eligibles. ROI at 534. A mistake made by an agency is not evidence of pretext unless there is evidence that the mistake was based on a complainant's protected classes. See Vickey S. v. Dep't of Defense, EEOC Appeal No. 0120112893 (Nov. 17, 2015); Hsieh v. Dep't of Veterans Affs., EEOC Appeal No. 0120120980 (June 4, 2012); Carroll v. Dep't of Justice, EEOC Appeal No. 01A20985 (Jan. 21, 2003). The HR Specialist stated that she was unaware of Complainant's age, color, and/or prior protected EEO activity, and Complainant has offered no evidence showing that the HR Specialist's mistake was based on her membership in any protected class. ROI at 532.

The Agency's legitimate, nondiscriminatory reason for not inviting Complainant to interview for the EAD Team Lead position was that only candidates with a rating of 98 or higher were invited to interview. Complainant received a rating of 96.[5] ROI at 755. As evidence of pretext, Complainant argues on appeal that a candidate who received a rating of 97 (Candidate-1) was invited to interview. As Complainant notes, the certificate of eligibles shows that Candidate-1 received a rating of 97 for the EAD Team Lead position. ROI at 753, 755. However, the record reflects that Candidate-1 was interviewed for the separate EID Team Lead position and was not considered for the EAD Team Lead position. ROI at 630-34. Accordingly, Complainant has not shown by preponderant evidence that any candidates with ratings lower than 98 were interviewed for the EAD Team Lead position at issue in claim (1).

Complainant asserted that the interview process was tainted because her name was left off the initial certificate of eligibles. However, the record reflects that the certificate of eligibles was amended within days of the HR Specialist making the mistake. ROI at 753-56.

---

[5] On appeal, Complainant provides a copy of a collective bargaining agreement (CBA) and argues that the CBA did not require the certificate of eligibles to include applicants' scores. As a general rule, no new evidence will be considered on appeal absent an affirmative showing that the evidence was not reasonably available prior to or during the investigation or during the hearing process. See EEO MD-110, at Chap. 9, § VI.A.3. We decline to consider this evidence first offered on appeal, as Complainant has not shown this evidence was not reasonably available during the investigation.

Moreover, Coworker-1, who was also left off the initial certificate of eligibles, was invited to interview for the EAD Team Lead position based on her rating of 98. ROI at 756. On appeal, Complainant contends that color was a factor because Coworker-1 has dark skin. According to Complainant, she was well qualified for the EAD Team Lead position because she had worked in EAD since 2016 and received Outstanding performance ratings. However, Complainant has not established by preponderant evidence in the record that the real reason she was not offered an interview was her color, rather than the rating she received.

According to Complainant, age was a factor because Selectee-1 was younger than 40 years old at the time of selection. Complainant also alleges that Selectee-1 was preselected for the position. The record reflects that Selectee-1 was offered an interview for the EAD Team Lead position based on her rating of 100. ROI at 756. According to the EAD Director, Selectee-1 was selected based on the interview panel's assessment of her interview performance. ROI at 495. The EAD Director stated that the panel did not consider Complainant's qualifications because she did not meet the threshold for an interview based on her score. ROI at 493. Complainant has not established pretext for discrimination based on color, age, and/or reprisal by the preponderance of the evidence.

Complainant alleged that she was subjected to harassment when the EAD Director made negative comments about her during an OASCR All Hands meeting and when he forwarded her email asking about awards to the PCD Director and to the Acting Chief of Staff. Complainant characterized the EAD Director's comments about her as negative, falsely characterizing her as a hostile or unprofessional employee. The EAD Director denied making negative comments about Complainant or making comments related to her color, age, and/or reprisal. SROI at 128. According to the EAD Director, he made glowing comments about Complainant, describing her as an employee who was always helpful and professional and stating that, even in situations where another employee might have reacted negatively or felt like cursing, Complainant was always polite, cheerful, and professional. SROI at 128. Moreover, the EAD Director apologized when Complainant informed him that she was offended by his comments because she would never use profanity. We do not find that Complainant has established that the EAD Director's comments were based on her color, age, and/or prior protected EEO activity.

In the July 13, 2021, email, the EAD Director explained that he had been sending an update about the Supreme Court and Black farmers and had forwarded the email to the PCD Director and to the Acting Chief of Staff by mistake as he was trying to multitask. SROI at 34. Regarding the award itself, the EAD Director stated that, despite informing Complainant of a change in the criteria for awards that required documentation of novel work performed outside of her job or participation in a major initiative project, Complainant did not submit such documentation. SROI at 129-30. Complainant alleges that, because the EAD Director was friends with the PCD Director and the Acting Chief of Staff, he influenced them not to select her for the EAD Team Lead position. However, the EAD Director stated that he was the selecting official for the EAD Team Lead position and denied that the PCD Director or the Acting Chief of Staff had the ability to select Complainant from the certificate for the EAD Team Lead position or recommend Complainant for a performance award. SROI at 130-31.

2022003796

The Acting Chief of Staff and the PCD Director stated that, although they served as interview panelists, they had no role in selecting candidates for interviews. SROI at 138-39, 157. Upon review, the preponderance of the evidence in the record does not establish that the EAD Director forwarded Complainant's email based on her membership in any protected class. Accordingly, Complainant has not established that she was subjected to a hostile work environment by the preponderance of the evidence in the record.

<u>CONCLUSION</u>

Based on a thorough review of the record and the contentions on appeal, including those not specifically addressed herein, we AFFIRM the Agency's final decision finding no discrimination.

<u>STATEMENT OF RIGHTS - ON APPEAL</u>
<u>RECONSIDERATION</u> (M0920)

The Commission may, in its discretion, reconsider this appellate decision if Complainant or the Agency submits a written request that contains arguments or evidence that tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests for reconsideration must be filed with EEOC's Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision.  If the party requesting reconsideration elects to file a statement or brief in support of the request, **that statement or brief must be filed together with the request for reconsideration**.  A party shall have **twenty (20) calendar days** from receipt of another party's request for reconsideration within which to submit a brief or statement in opposition.  <u>See</u> 29 C.F.R. § 1614.405; <u>Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614</u> (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015).

Complainant should submit his or her request for reconsideration, and any statement or brief in support of his or her request, via the EEOC Public Portal, which can be found at https://publicportal.eeoc.gov/Portal/Login.aspx

Alternatively, Complainant can submit his or her request and arguments to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, via regular mail addressed to P.O. Box 77960, Washington, DC 20013, or by certified mail addressed to 131 M Street, NE, Washington, DC 20507.  In the absence of a legible postmark, a complainant's request to reconsider shall be deemed timely filed if OFO receives it by mail within five days of the expiration of the applicable filing period.  <u>See</u> 29 C.F.R. § 1614.604.

An agency's request for reconsideration must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP).  See 29 C.F.R. § 1614.403(g).  Either party's request and/or statement or brief in opposition must also include proof of service on the other party, unless Complainant files his or her request via the EEOC Public Portal, in which case no proof of service is required.

Failure to file within the 30-day time period will result in dismissal of the party's request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request.  **Any supporting documentation must be submitted together with the request for reconsideration.**  The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances.  See 29 C.F.R. § 1614.604(f).

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision.  If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title.  Failure to do so may result in the dismissal of your case in court.  "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

## RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:


Carlton M. Hadden, Director
Office of Federal Operations


September 26, 2023
Date